[Civ. No. 24491. Third Dist. May 23, 1986.]

ROYAL GLOBE INSURANCE COMPANY,
Plaintiff, Cross-defendant and Respondent, v.
SUSAN E. WHITAKER et al.,
Defendants, Cross-complainants and Appellants.

**COUNSEL**

Howard L. Wesch for Defendants, Cross-complainants and Appellants.

Weintraub, Genshlea, Hardy, Erich & Brown and William A. Wilson for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**BACKUS, J.**\*—This is an appeal from a trial court's ruling in a declaratory judgment that the respondent, Royal Globe Insurance Company, owed no duty to defend its insured in an underlying action for fraudulent inducement and breach of contract. We shall affirm.

FACTS

The lower court's description of the "abbreviated and skeletal nature of the trial in this case" may be something of an understatement. It was submitted on the following stipulated facts.

Royal Globe issued a comprehensive business insurance policy to Jerry L. Knighten Construction Co. (Knighten) in 1979. In the general liability schedule of the policy, the basic coverage was described as "[t]he company will pay on behalf of the insured all sums which the insured shall become *legally obligated to pay* as damages because of [¶] A. *bodily injury* or [¶] B. *property damage* [¶] to which this insurance applies, *caused by an occurrence,* and the company shall have the right and duty to defend any suit against the insured seeking damages *on account of such bodily injury* or property damages, even if the allegations are groundless, false, or fraudulent . . . ." (Italics added.) In the general provisions applying to the general liability schedule, "occurrence" was defined as meaning "an accident . . .

---

\*Assigned by the Chairperson of the Judicial Council.

which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured, . . ."

In 1980, Knighten contracted with the appellants. Knighten promised to build a house, sell it to the appellants and to close escrow on a particular date. Instead, escrow closing was delayed by Knighten three weeks to appellants' detriment. Appellants filed suit against Knighten alleging two causes of action; the first was for breach of contract; the second was for fraud, i.e., that when Knighten promised to close escrow on the stated date he had no intention of performing that promise. The complaint alleged that as a proximate result of Knighten's "fraud and deceit and the facts herein alleged, [appellants] have suffered great mental anguish, nervousness, anxiety, worry and disappointment all to [their] damage in the sum of $20,000."[1] Knighten was served with the complaint and requested Royal Globe to defend him. Royal Globe declined to defend. Knighten and the appellants entered into a stipulation for the entry of a judgment in favor of appellants and against Knighten ". . . in the sum of $6,850.00 with respect to the first cause of action on file herein for breach of contract and in the sum of $10,000.00 with respect to the second cause of action for alleged intentional misrepresentations and mental and emotional distress in the sum of $10,000 for a total sum of $16,850, . . ." In return for a covenant not to execute, Knighten assigned to the appellants his rights to defense and indemnity from Royal Globe. Royal Globe filed a declaratory action, claiming it was not obligated to indemnify or defend. The appellants cross-complained for money. The case was tried on stipulated facts and documents including the judicially noticed underlying action. The trial court in its statement of decision after noting the high potential for collusion in this situation ruled for Royal Globe on the ground there was no reasonable expectation on the

---

[1]The damage allegation of the complaint's second cause of action and the prayer provide as follows: "7. As a proximate result of defendants' fraud and deceit and the facts herein alleged, plaintiffs have suffered damages in the sum of $18,853.20, said sum being the difference reflected by the interest ratio on the loan available September 3, 1980, . . . and the interest ratio on the loan actually received on September 23, 1980, . . . [¶] 8. As a further proximate result of defendants' fraud and deceit and the facts herein alleged, plaintiffs incurred temporary housing costs from on or about September 3, 1980, to on or about September 6, 1980, to plaintiffs damage in the sum of $30.00. [¶] 9. As a further proximate result of defendants' fraud and deceit and the facts herein alleged, plaintiff SUSAN E. WHITAKER was compelled to cancel fifteen (15) office appointments with her clients to her damage in the sum of $450.00. [¶] 10. As a further proximate result of the defendants' fraud and deceit and the facts herein alleged, *plaintiffs have suffered great mental anguish, nervousness, anxiety, worry and disappointment* all to plaintiffs' damage in the sum of $20,000.00. [¶] WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as follows: [¶] 1. Damages in the sum of $18,853.20 for increased interest charges on the loan dated September 23, 1980; [¶] 2. Damages in the sum of $30.00 for temporary housing costs; [¶] 3. General damages in the sum of $450.00 for lost income; [¶] 4. General damages in the sum of $20,000.00 for *mental suffering*; [¶] 5. Exemplary and punitive damages in the sum of $50,000.00; [¶] 6. Reasonable attorney's fees incurred herein; [¶] 7. Costs of suit incurred herein; . . . ." (Italics added.)

part of the appellants' assignor for a defense in this suit. A motion for a new trial was denied.

## DISCUSSION

 The construction of the policy before us is one of law because it is based on stipulated evidence and the terms of the insurance contract. We thus are not bound by the trial court's interpretation and it is our duty ultimately to resolve the question under the applicable principles of law. (*Economy Lumber Co.* v. *Insurance Co. of North America* (1984) 157 Cal.App.3d 641, 645 [204 Cal.Rptr. 135].)

In *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], the basic coverage in the contract before the court made "two wide promises:" to pay for all damages for bodily injury for which the insured was liable, and to defend any suit in which bodily injury damages were alleged. (*Id.,* at p. 272.) It *excluded* from these broad promises any coverage for bodily injury damages "'. . . caused intentionally by or at the direction of the insured.'" (*Id.* at p. 267.) ██ ██ Looking to "the nature and the kind of risk covered by the policy as a limitation upon the duty to defend," (*id.* at p. 275), the court held that since the complaint filed in the underlying action alleged bodily injury, and since the exclusion for intentional acts was unclear because an act can be intentional but cause unintentional harm (*id.* at pp. 269-275), "the insurer bore the obligation to defend because the policy led plaintiff reasonably to expect such defense, and because the insurer's exclusionary clause did not exonerate it, . . ." (*Id.* at p. 275.)[2] As an alternative holding, the court pointed out "the carrier must defend a suit which potentially seeks damages within the coverage of the policy . . . ." An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy. (*Id.* at pp. 275, 276-277 [italics deleted].) The appellants seek to invoke these doctrines in the present case.

However, as pointed out in *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218 [169 Cal.Rptr. 278], "The present case is readily distinguishable from *Gray* and many of the cases following it, which have

---

[2]In the present case, the trial court held that there was no duty to defend since ". . . the average, reasonable lay-insured, interpretating the provisions of the contract in question in this case, would not reasonably expect coverage under it for the type of suit . . . described, even for unintentionally caused damages of the nature alleged." We need not discuss appellant's contention that this finding turns the holding in *Gray* on its head. We hold that the language of the policy clearly defines the coverage limits on the respondent's duty to defend and appellant's claim did not fall within such coverage. It is only when the language of the policy does not clearly define the coverage that its meaning depends upon the reasonable expectation of the insured.

broadly interpreted the insurer's duty to defend. [Citing, inter alia, *Mullen v. Glen Falls Ins. Co.* (1977) 73 Cal.App.3d 163 (140 Cal.Rptr. 605).] In each of these cases, damages of the type covered by the policy had undisputably occurred, and the insurer relied on an unclear exclusionary clause in asserting it was not obligated to defend its insured.[3] *Here, on the other hand, the question concerns the scope of the basic coverage itself . . . ."* (Italics added.) (Accord, *St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199, 1203 n. 1 [208 Cal.Rptr. 5] [*St. Paul*].) The significance of this distinction lies in the burden of proof. ■ While the burden is on the insurer to prove a claim covered falls within an exclusion (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 880 [151 Cal.Rptr. 285, 587 P.2d 1098]), the burden is on the insured initially to prove that an event is a claim within the scope of the basic coverage. (*California Union Ins. Co.* v. *Trinity River Lands Co.* (1980) 105 Cal.App.3d 104, 111 [163 Cal.Rptr. 802]; *American Home Assurance Co.* v. *Essy* (1960) 179 Cal.App.2d 19, 23 [3 Cal.Rptr. 586].)

The language of the basic coverage in this case is readily distinguishable as well from that used in *Gray*[4] and is indistinguishable from that used in *St. Paul, supra,* 161 Cal.App.3d at p. 1201; *Economy Lumber, supra,* 157 Cal.App.3d at p. 646; and *Giddings, supra,* 112 Cal.App.3d at p. 217. ■ In each of those cases and here, the insurer only promises to indemnify or defend actions involving bodily injury caused by *an accident* resulting in bodily injury neither expected nor intended by the insured. It was therefore the appellants' burden to show they came within this definition. All the evidence they have adduced shows the act by their assignor, Knighten, was intentional. ■ An intentional act is not an "accident"[5] within the plain meaning of the word. (*St. Paul, supra,* 161 Cal.App.3d at pp. 1202-1203; *Economy Lumber, supra,* 157 Cal.App.3d at pp. 647-648; cf. *Giddings, supra,* 112 Cal.App.3d at pp. 218-220 [construing "property damage"].) ■ The same roadblock at the definition of "accident" halts any argument claiming the appellants' assignor intended his act but not the resulting harm.

---

[3]The same is true in appellants' case of *Allstate Ins. Co.* v. *Overton* (1984) 160 Cal.App.3d 843, 845-846 [206 Cal.Rptr. 823] and underlies the holding in *Ohio Casualty Ins. Co.* v. *Hubbard* (1984) 162 Cal.App.3d 939, 947-948 [206 Cal.Rptr. 806] (insurer admitted duty to defend; punitive damages exclusion operating as matter of law rather than explicitly in policy did not give insured notice there would be no defense for that issue, thus insured reasonably expected defense from policy).

[4]After the words "property damage" the policy in *Gray* did not contain the words "to which this insurance applies, caused by an occurrence."

[5]In *St. Paul,* Justice Evans, writing for the court, held that "in its plain and ordinary sense, 'accidental' means 'arising from extrinsic causes [;] occurring unexpectedly or by chance [; or] happening without intent or through carelessness.' (Webster's Ninth New Collegiate Dict. (1983) p. 49.)" (*Id.,* at p. 1202.)

To the extent that *Gray's* "alternative holding"[6] constitutes a separate analytic framework *(Mullen, supra,* 73 Cal.App.3d at p. 172 [citing *Gray, supra,* 65 Cal.2d at pp. 275-277]), the present case is again distinguishable on the ground the appellants' have failed to satisfy their burden of proof. In *Gray,* the insured offered evidence he had made his insurer aware of the complaint and the facts of his defense which would negate intention; the same is true in *Mullen.* (73 Cal.App.3d at p. 170.) Here, there is a total failure of proof of what facts were before Royal Globe when it made its decision not to defend. For all we know, it may have made an investigation uncovering facts which brought the claim outside the basic coverage. *(Dillon v. Hartford Acc. & Indem. Co.* (1974) 38 Cal.App.3d 335, 344 [113 Cal.Rptr. 396] [as later harmonized by that court in *Mullen, supra,* 73 Cal.App.3d at p. 173]; *State Farm Mutual Auto Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538, 548 [95 Cal.Rptr. 296].) Thus, the appellants have not shown facts known to Royal Globe that demonstrated potential liability under the policy.[7]

In addition, although the trial court apparently agreed with appellant's assertion that the underlying complaint contained a potential claim for unintentionally caused—accidentally caused—bodily injury,[8] we do not. Appellant's claim against Knighten was based on an allegation that Knighten intentionally made a promise to appellants that he did not intend to keep; that when the time came to keep that promise he did not do so; appellant's "bodily injury" resulted. It makes no difference whether when the time came to keep the promise Knighten intentionally or unintentionally failed to do so since the gravamen of the fraud claimed by appellants against Knighten was the mispresentation of the fact that at the time he made the

---

[6]We do not think it necessary to decide this issue and only do so in an abundance of caution. The *Gray* court held that *in that case* the insurer had a duty to defend all claims for bodily injury regardless of whether such injuries were intentionally or unintentionally caused. This was so even though there was no duty to indemnify if the injuries were intentionally caused. In answer to the carrier's argument that the duty to defend arises only if the pleadings disclosed a cause of action for which the insured must indemnify the insured, the court held that even if it accepted defendant's premise, so long as the suit potentially sought covered damages the carrier under such a policy was required to defend. We do not have such a policy in this case. In this case the duty to defend itself (not just the indemnity provision) is conditioned upon the accidental nature of the claim. If we were to hold that in spite of such clear limiting language the insured had a duty to defend any case no matter what kind and no matter how it arose if it *potentially* seeks damages for accidentally caused bodily injury then such limiting language would have no real effect.

[7]The recent case of *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598 [222 Cal.Rptr. 276] ("CNA") is readily distinguished upon this basis. In CNA the extensive factual allegations of the complaint implicated the potention liability of the insurers. There are no such facts alleged in this case. (See fn. 1, *ante.*)

[8]Respondent insurance company conceded that the "great mental anguish, nervousness, anxiety, worry and disappointment" constituted "bodily injury" within the meaning of the policy.

promise to close escrow on the date selected that he *then* had no intention to do so. (4 Witkin Summary of Cal. Law (8th ed. 1974) Torts, § 453; Rest.2d Torts, § 530, 544.)

The judgment is affirmed.

Evans, Acting P. J., and Sims, J., concurred.