[No. F010623. Fifth Dist. Aug. 11, 1989.]

MERCED MUTUAL INSURANCE COMPANY, Plaintiff and Respondent, v.
BOBBY MENDEZ et al., Defendants and Appellants.

**COUNSEL**

Ralph S. Temple, Jr., Canelo, Hansen & Wilson and James H. Wilson for Defendants and Appellants.

Marderosian & Swanson and James W. Swanson for Plaintiff and Respondent.

## OPINION

**ARDAIZ, J.**—This is an appeal from the entry of summary judgment in favor of respondent Merced Mutual Insurance Company. The trial court determined respondent had no duty to defend or indemnify Mendez for damages caused by engaging in acts of oral copulation and attempted oral copulation allegedly against Ms. Peery's will. We shall affirm.

On October 16, 1985, Helen and Claude Peery filed a complaint against Bobby Mendez and the County of Merced, claiming Mendez had sexually assaulted Ms. Peery several times at their mutual place of employment. The complaint alleged causes of action for both intentional and negligent assault and battery. The complaint further alleged causes of action for both intentional and negligent infliction of emotional distress stemming from the incidents.

Depositions of both Mendez and Peery, submitted with the motion for summary judgment, reveal radically divergent versions of the events. Mendez's version portrays a consensual sexual encounter between the parties. Peery's recital of events reveals a brutal physical attack culminating in forced oral copulation and three attempts by Mendez to repeat the act.

At the time the acts occurred and at the time the Peery complaint was filed, Mendez was covered under a homeowners policy issued by respondent. With respect to personal liability, the policy provides in relevant part: "If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will: [¶] 1. pay up to our limit of liability for the damages for which the insured is legally liable; and [¶] 2. provide a defense at our expense by counsel of our choice, even if the allegations are groundless, false or fraudulent." The policy defines "occurrence" as "an accident, including exposure to conditions, which results, during the policy period, in: [¶] a. bodily injury; or [¶] b. property damage." The policy then excludes coverage for: "bodily injury or property damage: [¶] a. which is expected or intended by the insured."

Mendez tendered his defense to respondent. Respondent filed an action for a declaratory judgment that it had no obligation to indemnify or defend Mendez in the action brought by the Peerys. Respondent argued Mendez's acts were intentional and thus not within the general coverage provisions of the homeowners policy. Alternatively, respondent argued the conduct com-

plained of was excluded under policy provisions and Insurance Code section 533.[1]

After hearing on respondent's motion for summary judgment, the court issued the following decision: "Plaintiff has moved for a Summary Judgment declaring that it has no obligation to defend Bobby Mendez nor to indemnify him for damages he is alleged to have caused Helen Peery and Claude Peery.

"Plaintiff had issued one or more homeowners insurance policies to Mendez at least one of which was in effect at the relevant time.

"The policy provided coverage to Mendez if a claim is made or suit brought against him because of bodily injury caused by an occurrence. The word 'occurrence' means an accident which results in bodily injury. The policy coverage does not apply to injury which is expected or intended by the insured. The conclusion to be drawn from the testimony of Mendez relied on in this proceeding was that his sexual advances to Peery were consensual and there was no wrongdoing.

"If Mendez misunderstood or misinterpreted the words and acts of conduct of Peery and continued his advances he, nevertheless, intended those acts and the consequences of those acts. Peery's claim of harm does not make those acts of Mendez accidental."

Appellants filed timely notices of appeal.

### DISCUSSION

■ Summary judgment is proper where no triable issue of fact is presented and the sole question is one of law. (*Neinstein* v. *Los Angeles Dodgers, Inc.* (1986) 185 Cal.App.3d 176, 179 [229 Cal.Rptr. 612].) ■ Where the underlying facts are not disputed, construction of an insurance policy presents a question of law. The appellate court is not bound by the trial court's interpretation. Rather, it must independently interpret the language of the insurance contract. (*Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 536 [226 Cal.Rptr. 435].)

■ At the outset, we recognize that the "insurer's duty to defend [Mendez] is broader than its duty to indemnify . . . because the duty to defend arises if the underlying civil claim is potentially covered by insurance. [Citations.] 'But where there is no possibility of coverage, there is no

---

[1] Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

duty to defend' [citation] and the insurer is entitled to declaratory relief if the underlying civil action will not resolve issues affecting coverage." (*Fire Insurance Exchange* v. *Abbott* (1988) 204 Cal.App.3d 1012, 1029 [251 Cal.Rptr. 620].)

We further note at the outset that the cases relied on by appellant in urging a duty to defend are distinguishable and thus not controlling. In *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], the policy in question provided for payment " '. . . on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, . . .' " (*Id.* at p. 267.) The policy further provided: " '[T]he company shall defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this endorsement, even if any of the allegations of the suit are groundless, false, or fraudulent . . . .' " (*Ibid.*) The policy excluded coverage for bodily injury damages caused intentionally by the insured. (*Ibid.*)

Similarly, the policy language in *Allstate Insurance Company* v. *Overton* (1984) 160 Cal.App.3d 843 [206 Cal.Rptr. 823] provided broad coverage for " '. . . all sums arising from the same loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy. [¶] We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are not true. . . .' " (*Id.* at pp. 845-846.) The policy then excluded losses " '. . . intentionally caused by an insured person. . . .' " (*Id.* at p. 846.)

As respondent notes, the language of the policy in *Gray* and *Overton* is clearly distinguishable from the policy language in the present case. As previously noted, the policy here affords coverage and a duty to defend only "[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage *caused by an occurrence to which this insurance applies.*" (Italics added.) "Occurrence" is elsewhere defined as an "accident."

The policy in *Gray* did not include, as does the subject policy, the words "caused by an occurrence to which this insurance applies." The importance of this distinction is discussed in *Royal Globe Ins. Co* v. *Whitaker, supra,* 181 Cal.App.3d 532 as follows: "[H]ere [unlike *Gray*], the insurer only promises to indemnify or defend actions involving bodily injury caused by *an accident* resulting in bodily injury neither expected nor intended by the insured." (*Id.* at p. 537, italics added.)

As the court in *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213 [169 Cal.Rptr. 278] (hg. den. Jan. 14, 1981) explains: "The present case is readily distinguishable from *Gray* and many of the cases following it, which have broadly interpreted the insurer's duty to defend. [Citations.] In each of these cases, damages of the type covered by the policy had undisputably occurred, and the insurer relied on an unclear exclusionary clause in asserting it was not obligated to defend its insured. Here, on the other hand, the question concerns the scope of the basic coverage itself . . . ." (*Id.* at p. 218.)

■ Thus, the threshold question in the present case is not whether an exclusion applies, but rather the scope of coverage itself: whether the conduct in question constitutes an accident within the meaning of the policy provision. ■ In a declaratory relief action to determine the insurer's obligations under the policy, the burden is on the insured initially to prove an event is a claim within the scope of the basic coverage. (*Royal Globe Ins. Co.* v. *Whitaker, supra,* 181 Cal.App.3d at p. 537.) The burden then shifts to the insurer to prove the claim falls within an exclusion. (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 880 [151 Cal.Rptr. 285, 587 P.2d 1098].)[2]

The established principles applicable to the interpretation of insurance policies are set forth in *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800 [180 Cal.Rptr. 628, 640 P.2d 764]: ■ "Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. [Citations.]

■ "On the other hand, 'any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates.' [Citations.] The purpose of this canon of construction is to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy." (*Id.* at pp. 807-808.)

■ A policy provision is ambiguous if it is capable of two or more constructions, both of which are reasonable. (*Producers Dairy Delivery Co.*

---

[2] *Clemmer* is concerned with exclusion from coverage because of the provisions of Insurance Code section 533, which states: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

We address here what constitutes included acts within the policy definition of "occurrence." We do not address what is a statutorily excluded act under section 533 and as expounded on by *Clemmer.*

v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920]; *Island* v. *Fireman's Fund Indemnity Co.* (1947) 30 Cal.2d 541, 548 [184 P.2d 153, 173 A.L.R. 896].)

 The policy in the present case provides coverage and a defense for injury caused by an occurrence. An occurrence is defined as an "accident, including exposure to conditions, which results, during the policy period, in (a) bodily injury; . . ."

The parties appear to agree that in order for coverage and a duty to defend to exist, the acts of oral copulation and attempted oral copulation must be deemed an "accident" within the meaning of the policy. They also agree Mendez intentionally engaged in the acts in question. The dispute centers on the meaning of the term "accident." Respondent contends the acts do not constitute an accident because they were intentionally performed by Mendez. Conversely, appellants contend an accident occurs even if the acts causing the alleged damage were intentional as long as the resulting damage was not intended. The argument urged by appellants has been repeatedly rejected by the appellate courts.

In *St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199 [208 Cal.Rptr. 5], the underlying suit against the insured involved an action for wrongful discharge. The court was called on to construe policy language similar to that in the present case: there the policy covered the insured against claims for " '. . . bodily injury or damage to tangible property resulting from an accidental event.' " (*Id.* at p. 1201.) The court noted: "In its plain and ordinary sense, 'accidental' means 'arising from extrinsic causes[;1] occurring unexpectedly or by chance[; or] happening without intent or through carelessness.' (Webster's Ninth New Collegiate Dict. (1983) p. 49.) The policy itself states that 'the accidental event . . . must be something [the insured] didn't expect or intend to happen.' " (*Id.* at p. 1202.) The court concluded the employee's termination did not constitute an "unintentional, unexpected, chance occurrence" (*ibid.*) and thus there was no potential liability under the policy. Accordingly, the court held the insurer had no duty to defend.[3] (*Id.* at pp. 1202-1203.)

In *Commercial Union Ins. Co.* v. *Superior Court* (1987) 196 Cal.App.3d 1205 [242 Cal.Rptr. 454] (rev. den. Feb. 24, 1988), the policy provided coverage and a defense for damages as a result of bodily injury or property damaged " 'caused by an *occurrence*.' " (*Id.* at p. 1206, italics in original.) "Occurrence" was then defined by the policy as " 'an accident, including,

---

[3] The court in *Royal Globe Ins. Co.* v. *Whitaker, supra,* 181 Cal.App.3d 532 also concluded: "An intentional act is not an 'accident' within the plain meaning of the word." (*Id.* at p. 537, fn. omitted.)

continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage*. This injury or damage must be neither expected nor intended by *you*. . . .' " (*Id*. at p. 1207, italics in original.) As in *St. Paul,* the underlying action against the insured involved a claim of wrongful discharge. Relying on *St. Paul,* the court concluded the trial court erred in applying the "term 'accident' to the consequences of the act rather than to the happening of the act itself." (*Id*. at p. 1208.) The court held: "An intentional termination is not an 'occurrence' under the policy because it is not an accident. The definition of 'accident' halts any argument that real party intended his act but not the resulting harm." (*Id*. at p. 1209.)

In *Hogan* v. *Midland National Ins. Co.* (1970) 3 Cal.3d 553 [91 Cal.Rptr. 153, 476 P.2d 825], the Supreme Court construed the term "accident" with respect to a policy providing coverage for property damage " *'caused by accident.'* " (*Id*. at p. 558, italics in original.) There, a saw manufactured by the insured was defective in that it cut the lumber more narrowly than it should. This defect in the saw was not discovered until after a substantial amount of the lumber had been processed. After the buyer discovered the defect, he deliberately cut lumber wider than ordered to compensate for the defect in the saw.

Focusing on the foreseeability of the damages, the insurance company argued damage to the boards resulting from cutting the widths too narrow was not the result of an accident within the meaning of the policy because all of the damages "were not only foreseeable and expectable but were in fact foreseen since Kaufman knew from the outset that the saw was defective and would not cut lumber to the precise size desired." (*Id*. at p. 559.) Quoting *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558 [334 P.2d 881], the court stated: " 'No all-inclusive definition of the word "accident" can be given . . . "as a source and cause of damage to property, within the terms of an accident policy, [accident] is an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause." ' " (*Hogan* v. *Midland National Ins. Co., supra,* 3 Cal.3d at p. 559.)

The court then concluded: "The damage to the boards which were undercut resulted from an accident within the meaning of the policy, but the lumber deliberately cut too wide was not damaged as the result of an accident." (*Hogan* v. *Midland National Ins. Co., supra,* 3 Cal.3d at p. 558.) The court reasoned: "The circumstances, and the legal consequences, differ as to the boards cut too wide. By design, Kaufman processed the boards wider than required for his orders in order to avoid rejection for undercutting. The damages awarded by the trial court were for the additional cost of the lumber necessary for the larger widths and the added freight cost. Whatever the motivation, there is no question that these boards were *delib-*

*erately* cut wider than necessary; the conduct being calculated and deliberate, no *accident* occurred within the *Geddes I* definition." (*Id.* at p. 560, italics in original.)

We reject appellants' argument that in construing the term "accident," chance or foreseeability should be applied to the resulting injury rather than to the acts causing the injury. ▇ In terms of fortuity and/or foreseeability, both "the *means* as well as the result must be unforeseen, involuntary, unexpected and unusual." (*Unigard Mut. Ins. Co.* v. *Argonaut Ins. Co.* (1978) 20 Wn.App. 261 [579 P.2d 1015, 1018], fn. omitted, italics added.) We agree coverage is not always precluded merely because the insured acted intentionally and the victim was injured. An accident, however, is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage. (*Ibid.*) Clearly, where the insured acted deliberately with the intent to cause injury, the conduct would not be deemed an accident. Moreover, where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury. Conversely, an "accident" exists when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity.

The following is illustrative. When a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident. On the other hand, where the driver was speeding and deliberately hit the other car, the act directly responsible for the injury—hitting the other car—would be intentional and any resulting injury would be directly caused by the driver's intentional act.

▇ In the present case, Mendez admits intentionally engaging in sexual activity with Ms. Peery. This sexual activity, which Ms. Peery alleges occurred against her will, forms the basis of her action against Mendez. All of the acts, the manner in which they were done, and the objective accomplished occurred exactly as appellant intended. No additional, unexpected, independent or unforeseen act occurred. "Whatever the motivation," because Mendez's conduct was "calculated and deliberate" (*Hogan, supra,* 3 Cal.3d at p. 560), it was not an "accident" and thus not an "occurrence" within the meaning of the policy provision. Because the conduct was not an "occurrence" the insurer has no duty to defend an action arising out of this conduct.

Appellants further contend because the policy also contains an exclusion for damages for bodily injury or property damage "which is expected or intended by the insured," an insured could reasonably expect "intended bodily injury is not covered, while unintended or negligent bodily injury is covered." A similar argument was rejected in *Commercial Union* as follows: "The trial court's mistake is in interpreting the policy's definition of 'occurrence.' The policy requires an 'accident . . . which results in *bodily injury* or *property damage*.' The next sentence then explains that the 'injury or damage must be neither expected nor intended.' This sentence does not change the meaning of accident or remove the requirement that any injury or damage be accidentally caused. It merely explains that expected or intended injuries or damage are not 'accidents' within the meaning of the policy.

"The court has read the sentence '[t]his injury or damage must be neither expected nor intended by you' to imply (through silence, apparently) that coverage may exist even though *the act leading to* the injury or damage is expected or intended. No such inference may be drawn because it would contradict the plain and ordinary meaning of the word 'accident.' (See *St. Paul Fire & Marine Ins. Co.* v. *Superior Court, supra,* 161 Cal.App.3d at p. 1202.)" (*Commercial Union Ins. Co.* v. *Superior Court, supra,* 196 Cal.App.3d at p. 1209.)

Appellants' argument also fails because the construction offered results in a strained interpretation of the word "accident." Appellants below agreed that if the jury solely believed Ms. Peery there would be no coverage; if the jury solely believed Mendez then there would be no liability; if the jury found Mendez acted under an honest and reasonable but mistaken belief in Peery's consent there would be no liability. The possibility of coverage exists only if the jury should find Mendez acted with an honest but unreasonable belief in consent. The argument, in effect, is that Mendez's purported honest but unreasonable belief in consent would constitute negligence. According to appellants, this mistaken belief "alter[s] the very character of the act itself" and renders it accidental. However, such a state of mind clearly constitutes a felony violation of Penal Code section 288a[4] and/or

---

[4] Penal Code section 288a provides in pertinent part: "(a) Oral copulation is the act of copulating the mouth of one person with the sexual organ or anus of another person. [¶] . . . . (d) Any person who, while voluntarily acting in concert with another person, either personally or by aiding and abetting that other person, commits an act of oral copulation (1) when the act is accomplished against the victim's will by means of force or fear of immediate and unlawful bodily injury on the victim or another person, or (2) where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat, or (3) where the victim is at the time incapable, because of a mental disorder or developmental or physical disability, of giving legal consent, and this is known or reasonably should be

assault with intent to commit oral copulation (Pen. Code, § 220).[5] Although the law recognizes one might have a nonculpable state of mind if one has a reasonable bona fide belief in consent (*People* v. *Mayberry* (1975) 15 Cal.3d 143, 155 [125 Cal.Rptr. 745, 542 P.2d 1337]), the law would impose criminal responsibility where the belief in consent was unreasonable. We find it an anomaly that appellant could claim insurance coverage under the guise of an "accident" by claiming his conduct constituted a felony.

We decline to construe the term "accident" to include conduct constituting the crime of forcible oral copulation and/or assault with intent to commit forcible oral copulation. We further are unable to posit any factual construction where such conduct might be interpreted as accidentally occurring.

As the court stated in *Giddings* v. *Industrial Indemnity Company, supra,* 112 Cal.App.3d 213, 218: ▉ "[T]he insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risks covered by the policy [citations].

" . . . . . . . . . . . . . . . . . . . . .

▉ ". . . . In construing the language of an insurance policy, a court should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary [citations]. When the language is clear, a court should not give it a strained construction to impose on the insurer a liability which it has not assumed [citations]." ▉ For us to accept the construction of the term "accident" offered by appellants would strain credulity.

Moreover, our refusal to adopt appellants' construction of the term "accident" does not violate the general rule that ambiguous terms should be construed to protect the insured's reasonable expectation of coverage. We cannot seriously conclude any reasonable insured would expect the term "accident" included acts constituting the felony crime of forcible oral copulation.

known to the person committing the act shall be punished by imprisonment in the state prison for five, seven, or nine years. Notwithstanding the appointment of a conservator with respect to the victim pursuant to the provisions of Lanterman-Petris-Short Act (Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code), the prosecuting attorney shall prove, as an element of the crime described under paragraph (3), that a mental disorder or developmental or physical disability rendered the alleged victim incapable of giving legal consent."

[5] Penal Code section 220 provides: "Every person who assaults another with intent to commit mayhem, rape, sodomy, oral copulation, or any violation of Section 264.1, 288 or 289 is punishable by imprisonment in the state prison for two, four, or six years."

The conduct giving rise to the underlying action against appellant is not an "accident" and thus not an "occurrence" within the coverage provision. Because there is no potential basis for coverage, there is no duty to defend.

The judgment is affirmed. Costs to respondent.

Best, Acting P. J., and Stone (W. A.), J., concurred.