141 F.3d 1173
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee,
v.
CHUBB GROUP, Defendant-Appellant,
Russell W. Colliau, et al., Defendants.
Allstate Insurance Company, Plaintiff-Appellant,
v.
Russell W. Colliau, et al., Defendants,
and
Fireman's Fund Insurance Company, Defendant-Appellee.
 No. 97-15197, 97-15231.
C.A. No. 97-15197.
D.C. No. CV-94-00720-GEB.
 C.A. No. 97-15231.
 United States Court of Appeals, Ninth Circuit.
 Decided March 9, 1998.
Argued and Submitted February 12, 1998 San Francisco, California.
 
 Appeal from the United States District Court for the Eastern District of California, Garland E. Burrell, District Judge, Presiding.
 Before SCHROEDER, FARRIS and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 Background
 
 2
 Russell Colliau volunteered as chief usher at Governor Pete Wilson's 1991 inaugural church ceremony. Acting in his capacity as chief usher, he placed four anti-abortion protestors under citizen's arrest for violating California Penal Code § 302 (disturbing a religious service). Police escorted these protestors, as well as seven others who were also disturbing the ceremony, out of the church.
 
 
 3
 Ten of the arrested protestors brought numerous counts against Colliau, including assault and battery, intentional and negligent infliction of emotional distress, and civil rights violations. See Burns v. Wilson, E.D.Cal., CV No. S-92-20GEB. As part of their counts against Colliau, they alleged that the officers abused them. According to the protestors' complaint, one of the officers dropped a protestor and caused her to hit her head against the floor. Another protestor had "the rosary beads that had belonged to his deceased wife ... torn from his hands..." They were all "hustled" out the door by the arresting officers. ER 233-236.
 
 
 4
 Claims brought by the six protestors who were not arrested by Colliau were dismissed on summary judgement. Three other protestors settled for $60,000. The remaining protestor, Rhomberg, went to trial. The jury returned a defense verdict on all counts in less than an hour.
 
 
 5
 The costs of defending Colliau and four of the other defendants were shared by three insurance companies, Allstate, Fireman's Fund and Chubb. Allstate had written a homeowner's policy for Colliau. Fireman's had insured the "Pete Wilson for Governor Committee". Chubb had insured the "Inaugural Committee for Governor Pete Wilson ." They divided the $220,000 in defense costs and fees equally, though Allstate reserved the right to contest in a letter to the others on April 8, 1993, and in numerous subsequent letters. The companies also shared the cost of the $60,000 settlement. Chubb paid $25,000, Allstate paid $20,000 and Fireman's paid $15,000.
 
 
 6
 Allstate had sold a homeowner's policy to Colliau, which gives "Family Liability and Guest Medical Protection" coverage under the following terms:
 
 
 7
 Subject to the terms, limitations and conditions of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an accident and covered by this part of the policy.
 
 
 8
 (emphasis added). The policy excludes "intentional acts".
 
 
 9
 The Fireman's policy was written for the "Pete Wilson for Governor Committee". It named as insured "your employees, other than your executive officers, but only for acts within the scope of their employment." The policy extended coverage for liability for "bodily injury" only; "personal injury" was not covered. These terms are defined at ER 173 and 174. The policy provided that bodily injury must be caused by an "occurrence". The term "occurrence" was defined as
 
 
 10
 [a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions (emphasis added).
 
 
 11
 The term "accident" was not defined in either the Allstate or the Fireman's policy.
 
 
 12
 Chubb's policy insured the "Inaugural Committee". Its terms are not at issue because Chubb admits a duty to provide Colliau's defense. However, Chubb contests the allocation of the expenses among the parties.
 
 
 13
 During the litigation, after Allstate had indicated its reservation of rights but before it had paid anything, Allstate representative Borovansky asserted that "[i]n regards to the defense of Russell Colliau only, we do recognize that our duty to defend is equal to that of Fireman's and Chubb." See letter dated September 22, 1993. ER 341. However, after receiving this letter, Chubb acted as if Allstate had not agreed to anything, and continued to demand a one-third split. See Supplemental ER 49. Fireman's also acted as if nothing was settled yet ("Your plans seem too impractical to implement"). See Supplemental ER 85. Allstate finally agreed on November 3, 1993, to tender one third of Colliau's defense costs with reservation of rights.
 
 
 14
 Following the payment, Allstate got declaratory judgement in district court that the policies of both Allstate and Fireman's did not cover the suit because the claims against Colliau did not arise out of an "accident," but rather out of the intentional act of arresting the protestors. Chubb appealed.
 
 Discussion and Conclusion
 
 15
 We review the meaning of an insurance policy de novo. HS Services, Inc. v. Nationwide Mutual Ins. Co., 109 F.3d 642, 644 (9th Cir.1997)(applying California law). We review factual findings based on evidence other than policy language for clear error. R.B. Matthews v. Transamerica Transp. Serv., 945 F.2d 269, 272 (9th Cir .1991). Clear error exists when a finding of fact is predicated on a misunderstanding of the governing rule of law. Bose v. Consumers' Union of the United States, Inc., 466 U.S. 485, 501, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).
 
 
 16
 Chubb argues that the district court erroneously found no accident because it misstated California law. The district court held that the act or acts which gave rise to this litigation was not "accidental", since the act of arresting someone is always intentional. We disagree.
 
 
 17
 Under California law, an accident is "an unexpected, unforeseen, or undesigned happening of consequence from either a known or unknown cause." Hogan v. Midland Nat'l Ins. Co., 3 Cal.3d 553, 559, 91 Cal.Rptr. 153, 476 P.2d 825 (1970), quoting Geddes & Smith, Inc. v. Paul Mercury Indemnity Co., 51 Cal.2d 558, 563-64, 334 P.2d 881 (1959). When defining accident, California courts look to whether the insured intended to do the act which caused the injury, not whether he intended the injury itself. See, e.g., Collin v. American Empire Ins. Co., 21 Cal.App.4th 787, 810, 26 Cal.Rptr.2d 391 (1994). However, the existence of a preceding intentional act does not always preclude the act which caused liability from being an "accident." "An accident is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." Merced Mutual Ins. Co. v. Mendez, 213 Cal.App.3d 41, 49, 261 Cal.Rptr. 273 (1989)(emphasis added).
 
 
 18
 The Merced court used a hypothetical to illustrate its point that intentional acts may lead to accidents if they are interceded by non-intentional acts which cause the actual injury.
 
 
 19
 Coverage is not always precluded merely because the insured acted intentionally and the victim was injured.... The following is illustrative. When a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury--hitting the other car--was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident.
 
 
 20
 213 Cal.App.3d at 50, 261 Cal.Rptr. 273. See also Peterson v. Superior Ct., 31 Cal.3d 147, 158-59, 181 Cal.Rptr. 784, 642 P.2d 1305 (1982), National American Ins. Co. v. Ins. Co. of North America, 74 Cal.App.3d 565, 571, 140 Cal.Rptr. 828 (1977), State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973).
 
 
 21
 The insurer has a duty to defend if the complaint can by a conceivable theory raise a single issue which would bring it within the policy coverage. See Gray v. Zurich Ins. Co., 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). Moreover, "accident" is always defined from the perspective of the insured. See Reserve Ins. Co. v. Pisciotta, 30 Cal.3d 800, 807-08, 180 Cal.Rptr. 628, 640 P.2d 764 (1982).
 
 
 22
 We hold that the protestors' battery claim against Colliau brings the suit against him under California's definition of "accident". Many of the acts which form the crucial basis of this claim, such as the dropping of a protestor's head against the floor and the ripping away of a protestor's rosary beads, were simply not intended by Colliau, nor can they in any way be said to have been "expected, foreseen, or designed" by him. These alleged acts, and not his preceding intentional act of ordering the arrests, caused the alleged injuries that formed the basis of the claim against him. The fact that intentional third party acts caused the injuries alleged in the battery claim is irrelevant. Compare Interinsurance Exchange of the Auto. Club. of So. Cal. v. Flores, 45 Cal.App.4th 661, 53 Cal.Rptr.2d 18 (1996), with AIG Hawaii Ins. Co. v. Estate of Caraang, 74 Haw. 620, 851 P.2d 321 (Haw.1993).
 
 
 23
 Interinsurance involved an insured who was sued after his passenger opened fire on a pedestrian. His insurance carrier denied coverage and the court agreed. The court held that the acts which formed the basis of the suit against insured were not "accidental" because insured intended that his passenger shoot the pedestrian. In Caraang, on the other hand, the court awarded coverage. There, the shooting, although intended by the passenger who pulled the trigger, was accidental from the insured's perspective because the insured did not expect, anticipate or intend the act of shooting.
 
 
 24
 Chubb next argues that Allstate cannot contest the payments it made toward Colliau's defense because Allstate waived any rights to contest in the Borovansky letter dated September 22, 1993. Under California law, "[w]aiver is the intentional relinquishment of a known right ... [proven] by clear and convincing evidence." Waller v. Truck Ins. Exch. Inc., 11 Cal.4th 1, 31, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995) (citations omitted). The district court found that Allstate did not intentionally waive the right to contest. This finding is entitled to clear error review. R.B. Matthews, 945 F.2d at 272. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse." Phoenix Eng'g Supply Inc. v. Universal Elec. Co., 104 F.3d 1137, 1141 (9th Cir.1997).
 
 
 25
 The district court's finding of no waiver is clearly plausible. There is no evidence in subsequent correspondence that any of the three insurers took this letter to indicate an agreement that Allstate was liable for one third of the costs. Fireman's and Chubb continued to act as if the apportionment were still a matter of dispute, as did Allstate.
 
 
 26
 Allstate, in its cross-appeal, argues that if it is found liable, then (1) Fireman's should also be liable, and (2) it should pay a pro-rata share of the defense and settlement costs, not one-third as it has done.
 
 
 27
 We conclude that Fireman's is liable under the "accident" language of its policy. There is no material difference between the two policies with respect to the definition of accident. Since the term is defined in neither policy, California law controls in both. None of Fireman's counter-arguments is convincing. Although the Fireman's policy does not cover liability for "personal injury", this exclusion is irrelevant because the acts allegedly done by Colliau, e.g. acts of battery, were alleged to have caused "bodily injury", which is covered under the Fireman's policy. Nor does the "intended act" exclusion deny coverage. Such an exclusion applies only when there has been some "preconceived design to inflict injury." Grain Dealers Lawyers Mutual Ins. Co. v. Moreno, 200 Cal.App.3d 1083, 246 Cal.Rptr. 410 (1988). The evidence does not show any intent by Colliau to inflict injury.
 
 
 28
 As for the amount each insurer owes, liability in California is proportionate to the extent of coverage, CNA Casualty of California v. Seaboard Surety Inc., 176 Cal.App.3d 598, 620, 222 Cal.Rptr. 276 (1986), unless policy language is to the contrary or when there are overriding equitable considerations. Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co., 45 Cal, App. 4th 1, 52 (1996). Allstate's coverage of Colliau is $300,000. Chubb's coverage of the Inaugural Committee is $625,000.* Fireman's coverage of the Campaign Committee is $1,000,000. The total is $1,925,000. Allstate's coverage, $300,000, is 15.5844% of the total amount.
 
 
 29
 There is no policy language which precludes Allstate liability for the proportional amount. Although the Chubb and Fireman's policies permit equal sharing, they do not require it. Nor are there equitable considerations which require us to change from proportional sharing. Fireman's argues that it insured the Campaign Committee, which was not responsible for the inauguration, and that although Colliau had been their employee, he stopped working for the Campaign Committee four months prior to the incidents. However, the plaintiffs sued Colliau in his capacity as an "employee or agent" of the Campaign Committee as well as of the Inaugural Committee. See ER 259-60. Fireman's policy gave broad coverage to employees and agents of the Campaign Committee, and the activities of the Campaign and Inaugural Committees overlap to a great degree. Fireman's can not escape its obligation to defend Colliau by asserting equitable considerations.
 
 
 30
 We hold that Allstate is obligated to pay 15.5844% of the total defense costs, it proportional share, not one third as it previously paid. It is entitled to a reimbursement of the difference. Allstate is also entitled to pay its proportional share of the settlement costs, 15.5844 of $60,000, not the $20,000 it paid. There is no basis to the other insurers, arguments that Allstate waived its right to be indemnified.
 
 
 31
 Declaratory judgement is REVERSED and the case remanded for further proceeding consistent with this opinion. Each side shall bear its own costs.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit, except as provided by Ninth Circuit Rule 36-3
 
 
 *
 The parties stipulated at hearing that Chubb's policy has $625,000. It was written for $1,000,000, but $375,000 was already paid out in an unrelated personal injury claim