Filed 10/30/13  Sigelman v. State Farm Gen. Ins. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PAUL SIGELMAN,<br><br>　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>STATE FARM GENERAL INSURANCE CO.,<br><br>　　　　Defendant and Respondent. | B241981<br><br>(Los Angeles County<br>Super. Ct. No. BC442609) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Abraham Khan, Judge.  Affirmed.

Perlman Law and Deborah Perlman for Plaintiff and Appellant.

Sedgwick LLP, Maria Louise Cousineau, Douglas J. Collodel and Dina R. Richman for Defendant and Respondent.

Paul Sigelman intentionally had a contractor remove the shower and bathtub from the bathroom in his condominium. He did so on the basis of incorrect information from his homeowners' association, which had mistakenly concluded that Sigelman's bathroom was the source of a water leak that had caused mold growth in a neighboring condominium. Sigelman made a claim for the damage (namely, the removal of his shower and bathtub) under his condominium owner's insurance policy with State Farm General Insurance Co. (State Farm). State Farm denied the claim, and Sigelman filed suit against both State Farm and the homeowner's association. State Farm prevailed on summary judgment, arguing that the damage was not an accidental direct physical loss and consequently was not covered. Sigelman appeals, and we affirm.

BACKGROUND

State Farm issued a condominium unit owner's policy to Sigelman for a condominium he owns in a high-rise complex. The policy had effective dates of January 27, 2010 to January 27, 2011.

On May 24, 2010, the Century Towers Association (Association), which is the homeowners' association for the building, sent Sigelman an email. The email informed Sigelman that earlier that day something that appeared to be mold was discovered in a closet in Sigelman's neighbor's condominium. The Association's engineers investigated and "found that the caulking on [Sigelman's] shower is defective" and that water "appears to go through" the wall of Sigelman's bathroom and into the neighbor's closet. The Association advised Sigelman that it was retaining a contractor ("National Econ") to test the drywall, in order to "mitigate damages" resulting from the apparent mold. The Association also recommended that Sigelman "contact a plumber to investigate the leak further, from [Sigelman's] side of the wall, so it can be stopped." Sigelman received a second email from the Association later that day, informing him that the wall between his unit and his neighbor's had tested "high for mold spores." The Association further stated that the next day it would "have the walls abated" in the neighbor's unit in order "to check for the source of the leak, which contributed to the mold. Until we open the

2

wall up and assess the situation, we won't definitively know what the source of the mold was."

On May 25, 2010, Sigelman called State Farm regarding a potential claim.

On May 26, 2010, the Association mailed and hand-delivered a letter to Sigelman concerning the leak. The letter informed Sigelman that the Association's engineers had "ascertained" that the mold in the neighbor's closet was caused by water leaking through a grout line in Sigelman's bathroom. The letter further stated that Sigelman had informed the Association that he planned to have a plumber fix the leak as soon as possible. Finally, the letter described the work that had already been performed by National Econ and another company to test the wall and contain the mold, and the letter said that Sigelman "may be responsible for reimbursing the Association." The letter then quoted the provision from the Association's covenants, conditions, and restrictions concerning reimbursement to the Association.

Although neither the Association nor Sigelman knew it at the time, the leak was not coming from Sigelman's bathroom after all. Rather, it was coming from a unit on a higher floor.

In a letter Sigelman sent to State Farm, he gave the following description of what happened next: "Following the letter [of May 26], I met with the association[']s environmental firm, National Econ . . . along with two engineers from the building. I was told they would have to remove the lower wall along the outer side of my bathtub, the bathtub, and the tile halfway up the wall, for inspection in order to insure the proper repair. I had been threatened that they needed to do so because of damage done to [the neighbor's] extensive wardrobe and because of the rapid development of both water and mold she would not be able to live in her condominium. This had to be taken care of by the following day—thereafter the intervening Memorial Day weekend would be a long delay. I was told the National Econ contract would be immediately emailed to me. No contract was emailed."

Sigelman met with and hired a contractor on Thursday, May 27, 2010. At Sigelman's request, the following day the contractor removed the shower, bathtub, and

associated tile from Sigelman's bathroom. ("The bathroom was fine. It was the shower stall that was bare studs.")

According to Sigelman, "water began to appear in the wall and corner floor" of his bathroom on the very next day. He immediately reported this to the building engineers, who came to his unit, concluded that his unit was not the cause of the leak into his neighbor's closet, and so informed the Association. On the following Tuesday, however, he received a phone call from the building's head engineer, telling him that his unit "must be the point of origin." Upon further investigation, the engineers determined that the leak was coming from a unit on a higher floor, not from Sigelman's unit.

According to Sigelman, the Association's "head manager" subsequently told him that "the Association would take responsibility for causing the bathtub and shower demolition. Two days later [Sigelman] was told that the Association changed its mind and the problem was [Sigelman's]."

On June 4, 2010, Sigelman called State Farm and told a claims representative that he was an attorney and was in the process of preparing a written report of the events of the loss, including supporting documentation. After further communications between State Farm and Sigelman, and after further investigation by State Farm, on July 12, 2010, a State Farm claims representative spoke to Sigelman and informed him that his claim was denied because there was no accidental direct physical loss to the insured property.

On July 29, 2010, Sigelman filed suit against State Farm and the Association. The operative second amended complaint alleges claims for breach of insurance contract, bad faith breach of insurance contract, "intentional reckless disregard," negligence, and gross negligence.

State Farm moved for summary judgment. In support of the motion, State Farm argued that because the damage to Sigelman's bathroom (namely, the removal of the shower and bathtub) was not accidental direct physical loss, it was not covered. On that basis, State Farm concluded that it did not breach the insurance contract by denying the claim, and that it likewise could not be liable for bad faith.

4

The superior court granted the motion and entered judgment in favor of State Farm. Sigelman timely appealed.

STANDARD OF REVIEW

We review the trial court's ruling on a motion for summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.)

DISCUSSION

Sigelman argues, as he did in the trial court, that the damage to his bathroom is covered by his State Farm policy. We disagree.

Sigelman's State Farm policy covers "accidental direct physical loss" to the insured property. The undisputed facts show that the damage to Sigelman's bathroom was not an accidental direct physical loss but rather was caused by Sigelman's intentional removal of the shower and bathtub (or by the contractor's intentional removal of the shower and bathtub pursuant to Sigelman's instructions).

"'Accidental' in an insurance policy typically means 'unintended and unexpected by the insured.' [Citations.] Accordingly, '[a]n accident . . . is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage.' [Citation.] Moreover, 'an injury-producing event is not an "accident" within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor.' [Citation.]" (*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* (2010) 187 Cal.App.4th 766, 781 (*MRI Healthcare*).)

Because Sigelman (the insured) intentionally chose to have the shower and bathtub removed, their removal was not accidental. The policy consequently does not cover the loss.

Sigelman argues, to the contrary, that there was "the additional, unexpected, independent, and unforeseen happening of the continuing toxic hazard and the Association's order" (i.e., the building engineers' alleged statements to Sigelman suggesting that the shower and bathtub should be removed before the weekend). We are not persuaded. As explained in *MRI Healthcare*, the loss is not caused by an accident if

5

it is caused by the insured's deliberate act unless "'some additional, unexpected, independent, and unforeseen happening *occurs that produces the damage*.'" (*MRI Healthcare*, *supra*, 187 Cal.App.4th at p. 781, italics added.) The reference to an additional, unexpected, independent, and unforeseen happening is to an event that intercedes between the insured's intentional conduct and the loss, thereby producing the damage. (For example, the insured is intentionally driving on a particular road when an unforeseen landslide drops dirt and debris onto the road, damaging the insured's vehicle.) Such unforeseen happenings do not include orders or recommendations that were accidentally based on incorrect information and led to the insured's intentional conduct. Otherwise, all losses caused by the insured's intentional conduct would be transformed into accidental losses whenever the insured could identify some "accidental" piece of incorrect information in the background of the insured's decision making.

Sigelman also relies on the following quotation from *Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41 (*Merced*): "When a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident." (*Id.* at p. 50.) As State Farm points out, however, Sigelman omits the next sentence in *Merced*: "On the other hand, where the driver was speeding and deliberately hit the other car, the act directly responsible for the injury— hitting the other car—would be intentional and any resulting injury would be directly caused by the driver's intentional act." (*Ibid.*) The result would be the same if some "accidental" piece of incorrect information lay behind the driver's decision to hit the other car (for example, the driver incorrectly believed that the other car contained his wife's lover). The facts of this case parallel the sentence of *Merced* that Sigelman omits, not the sentences that he quotes. Here, Sigelman deliberately removed his shower and bathtub; he did not deliberately do something else, as a result of which his shower and bathtub were accidentally removed.

6

Finally, Sigelman also relies on the "efficient proximate cause" doctrine, arguing that the Association's mistaken conclusion that the leak came from Sigelman's apartment was the efficient proximate cause of the removal of the shower and bathtub, notwithstanding his decision to have them removed. Again, we disagree. The efficient proximate cause of the loss is the "predominating cause." (*Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 403.) Here, even though the Association's mistake set in motion the course of events that led to the removal of the shower and bathtub, Sigelman's decision to have them removed was the predominating cause.

Because the undisputed facts show that Sigelman did not suffer a covered loss, the superior court correctly resolved Sigelman's claims in favor of State Farm. We therefore affirm the judgment.

## DISPOSITION

The judgment is affirmed. State Farm shall recover its costs of appeal.


ROTHSCHILD, J.

We concur:


MALLANO, P. J.



JOHNSON, J.