**The UPPER DECK COMPANY, LLC, a Delaware limited liability company, Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, an Indiana corporation; and Does 1 through 10, inclusive, Defendant.**

**No. CIV. 01CV1413–B(CGA).**

United States District Court, S.D. California.

May 21, 2002.

Gary Wayne Osborne, Osborne and Nesbitt, San Diego, CA, for The Upper Deck Company (Plaintiff).

Henry Brian LaTorraca, LaTorraca and Goettsch, Long Beach, CA, for Federal Insurance Company (Defendant).

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BREWSTER, Senior District Judge.

This case requires the Court to determine whether Federal Insurance Company ("Federal") has a duty to defend three separate lawsuits filed against The Upper Deck Company ("Upper Deck"). Upper Deck sells packs of sports and entertain-

ment trading cards, some of which contain randomly inserted "chase" cards of substantial value.[1]

## I. Introduction and Factual Background

*The litigation against Upper Deck*

On July 30, 1996, Marty Schwartz and others sued Upper Deck, claiming that Upper Deck violated RICO and California law by marketing its cards through methods that amounted to illegal gambling ("Schwartz litigation"). Defendant's Statements of Facts ("DSUF") ¶ 7. Two other plaintiffs, Chaset and Dumas, sued Upper Deck on September 13, 1999 and August 21, 2000, respectively, on allegations substantially similar to those in the Schwartz litigation. *Id.* ¶ 15–16. The Schwartz and Chaset causes of action were filed in the Southern District of California; the Dumas litigation was filed in San Diego Superior Court. Defendant's Motion, at 2.

*The Insurance Policy*

At all relevant times, Federal insured Upper Deck on a general commercial liability policy ("policy") and an umbrella policy. The primary policy said:

> We will pay the damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of: bodily injury or property damage caused by an occurrence; or personal injury or advertising injury to which this insurance applies.
>
> This insurance applies:
>
> 1. to bodily injury or property damage which occurs during the policy period; and

> 2. to personal injury or advertising injury only if caused by an offense committed during the policy period.
>
> We will defend any claim or suit against the insured seeking such damages. We will pay in addition to the applicable limit of insurance the defense expense.

DSUF, ¶ 55. The policy defined occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which results in bodily injury or property damage." *Id.* ¶ 57. Bodily injury was defined as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." Plaintiff, Statements of Facts ("PSUF"), ¶ 2. The primary policy allowed for coverage up to 1 million dollars on each occurrence; the umbrella policy provided up to 10 million dollars additional coverage for each occurrence. Plaintiff's Motion, at 3–4. The umbrella policy allowed for similar coverage and contained similar definitions except the umbrella policy defined bodily injury as "injury to the body, sickness or disease, disability or shock, mental anguish or mental injury sustained by any person." *Id.* at 4.

*Defense Tender and Subsequent History*

On or about August 21, 1996, Upper Deck tendered the Schwartz litigation to Federal. DSUF, ¶ 12. On December 4, 1996, Federal refused to defend the Schwartz complaint, contending that the Schwartz lawsuit did not involve an occurrence or bodily injury and, thus, was not covered under the insurance policy. *Id.* ¶ 13. On May 27, 1999, Upper Deck requested that Federal reconsider; on July

---

1. The Court takes judicial notice of the Diagnostic and Statistical Manual of Mental Disorders (4th ed.) ("DSM–IV"), the complaint of *Schwartz v. The Upper Deck Company,* 96CV3408–B (AJB), and the declaration of Kent B. Goss. The Court takes judicial notice of these documents, not for the truth of the averments, but that the averments were made.

28, 1999, Federal again refused to defend the Schwartz litigation. The Dumas action was tendered to Federal on September 23, 1999 and denied on December 8, 1999. Defendant, Motion, at 5. The Chaset complaint was tendered to Federal on September 6, 2000 and denied on September 28, 2000. *Id.*

On August 1, 2001, Upper Deck filed the instant complaint against Federal for breach of contract of its duty to defend and for declaratory relief. Upper Deck now files a motion for summary judgment that Federal has a duty to defend the Schwartz litigation only. Federal files a cross-motion for summary judgment, asking the court to rule that it does not have to defend the Schwartz, Chaset, and Dumas lawsuits.

## II. Summary of the Law

### A. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment must be granted if the party responding to the motion fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidence offered need not be in a form admissible at trial to avoid summary judgment. *Id.* at 324, 106 S.Ct. 2548. When

the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548.

The Court must determine whether evidence has been presented that would enable a reasonable jury to find for the non-moving party. *Liberty Lobby, Inc.,* 477 U.S. at 249–252, 106 S.Ct. 2505. If the Court finds that no reasonable fact-finder could, considering the evidence presented by the non-moving party and the inferences therefrom, find in favor of that party, summary judgment is warranted.

If the Court is unable to render summary judgment upon an entire case and finds that a trial is necessary, it shall if practicable grant summary adjudication for any issues as to which, standing alone, summary judgment would be appropriate. *See* FED. R. CIV. P. 56(d); *see also California v. Campbell,* 138 F.3d 772, 780 (9th Cir.), *cert. denied,* 525 U.S. 874, 119 S.Ct. 173, 142 L.Ed.2d 141 (1998).

### B. Duty to Defend

According to California law, the duty to defend is *extremely* broad. If the insured can show even a *potential* for indemnity, then the insurer must defend the action. *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). Unlike the obligation to indemnify, which is only determined when the insured's underlying liability is established, the duty to defend is assessed at the onset of litigation. The insured has the burden of proof to show the policy covers the underlying lawsuit; the insurer carries the burden to show the underlying action falls within an exclusion to the policy. *Montrose Chemical Corp. v. Superior Court of Los Angeles County,* 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). Courts make

the decision whether the insurer owes a duty to defend by comparing (1) the allegations of the underlying complaint, (2) extrinsic evidence known to the insured, and (3) the terms of the policy. *Id.* An insurer may have a duty to defend although it has no duty to indemnify, "either because no damages are awarded in the underlying action against the insured or because the actual judgment is for damages not covered under the policy." *Borg v. Transamerica Ins. Co.,* 47 Cal.App.4th 448, 454, 54 Cal.Rptr.2d 811 (1996).

■ Based on this broad duty to defend, the California Supreme Court has defined the respective burdens of the parties on summary judgment motions:

> To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the *absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within the policy coverage; the insurer must prove it *cannot.* Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) may fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law.

*Montrose,* 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (emphasis in the original). No duty to defend exists if the insurer can show that the complaint and extrinsic facts known to the insurer "can by no conceivable theory raise a single issue which would bring it within the policy coverage." *Gray,* 65 Cal.2d 263, 276 n. 15, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). If, however, the duty to defend depends on the resolution of a factual dispute, the insurer must defend the action. *Ringler*

*Associates Inc. v. Maryland Casualty Co.,* 80 Cal.App.4th 1165, 1186, 96 Cal.Rptr.2d 136 (2000) ("[W]here there is any doubt as to whether the duty to defend exists, the doubt must be resolved in favor of the insured and against the insurer."); *Amato v. Mercury Casualty Co.,* 18 Cal.App.4th 1784, 1790, 23 Cal.Rptr.2d 73 (1993) ("[T]he existence of a disputed fact determinative of coverage *establishes* the duty to defend.").

### III. Analysis

Upper Deck argues that when one compares the facts alleged in the complaint, the extrinsic evidence known to Federal, and the terms of the policy, a possibility of coverage exists. In other words, based on these factors, Upper Deck could *potentially* be held liable for damages incurred by the underlying plaintiffs for bodily injury caused by an occurrence.

### A. Occurrence

The insurance policy requires Federal to defend Upper Deck in any legal action that seeks damages as a result of bodily injury caused by an *occurrence.* The policy defined occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which results in bodily injury or property damage." DSUF, ¶ 55. The Court needs to decide whether a possibility exists that the underlying injuries were caused by an occurrence or, more specifically, an accident.

#### 1. Definition of an Accident

■ The California courts have spent considerable time defining the term "accident" as it is used in Comprehensive General Liability ("CGL") policies. Generally, an intentional act cannot constitute an accident, even if it causes unintended harm. *Chatton v. National Union Fire*

*Ins. Co.*, 10 Cal.App.4th 846, 861, 13 Cal. Rptr.2d 318 (1992) ("It is well settled that intentional or fraudulent acts are deemed purposeful rather than accidental and, therefore, are not covered under a CGL policy.") Although an accident usually refers to an unintended act, an exception exists so that an accident can flow from a deliberate act *"if some additional, unexpected, independent and unforeseen happening occurs that produces the damage." Merced Mut. Ins. Co. v. Mendez*, 213 Cal. App.3d 41, 50, 261 Cal.Rptr. 273 (1989) (emphasis added). Or, put another way, an accident will exist "when any aspect in the causal series of events leading to the injury was unintended by the insured and a matter of fortuity." *Id.*[2]

Upper Deck relies on two cases, *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity, Co.*, 51 Cal.2d 558, 334 P.2d 881 (1959), and *Hogan v. Midland Nat. Ins. Co.*, 3 Cal.3d 553, 91 Cal.Rptr. 153, 476 P.2d 825 (1970), to argue that an "accident" is not only an unexpected "happening," but also any unexpected **consequence** from an intentional act. In *Geddes*, 51 Cal.2d at 563–64, 334 P.2d 881 the court said, "[n]o all-inclusive definition of the word 'accident' can be given .... Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from a known or unknown cause." *See also Hogan*, 3 Cal.3d at 559, 91 Cal.Rptr. 153, 476 P.2d 825 (citing to the same quote in a property damage case).

Upper Deck's reliance on *Geddes* and *Hogan* is misplaced. The court in *Geddes* said the definition of accident that includes unexpected consequences applied to sources of *property damage*, not causes of *bodily injury.* 51 Cal.2d at 563–64, 334 P.2d 881 (noting, after citing to many different definitions of the term "accident," that this definition applied "as a source and cause of damage to property"). In our case, the underlying plaintiffs do not assert property damage.

Second, the appellate court in *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App.4th 715, 750, 15 Cal.Rptr.2d 815 (1993), specifically rejected the insured's reliance on *Geddes* to argue that any "unexpected or unintended result is an 'accident,' even if caused by intended conduct." The court held:

Although *Geddes* referred to an 'accident' as a 'consequence,' the reference played no part in the reasoning of the decision. Instead, the court concluded that the door failures involved in that case were accidents because they were unexpected, undesigned, and sudden. The property damage that resulted from the door failures was therefore 'caused by accident,' as the policy language required.

For the same reason, the logic and grammar of the post–1974 policies preclude our interpreting an accident as a 'consequence.' Those policies, which define an occurrence as 'an accident, including ...,' cover property damage caused by an 'occurrence.' Therefore, an 'occurrence' is a causal event, defined as an 'accident.' In this context, an 'accident' cannot mean unintended damage because the causal event also would be the result. Logically, a consequence cannot cause itself.

*Id.*

Accordingly, to show an accident from an intentional act, Upper Deck must show

**2.** Upper Deck argues that the definition of *Merced* does not apply to product liability cases. Plaintiff, Motion, 17–18; Opp. Motion, 12–13. Upper Deck, however, has failed to cite, and the Court has not found, any cases that distinguish between an "occurrence" as it is used in product liability cases and other cases. *Id.*

that the underlying plaintiffs' injury occurred because of a *happening,* or something that breaks the normal and expected causal chain of events.

### 2. Arguments

Federal argues Upper Deck purposefully inserted chase cards into its decks that it sold to its customers. According to Federal, it has no duty to defend because any possible injury to Schwartz, Dumas, and/or Chaset was not caused by an "accident," but by the deliberate actions of Upper Deck. *See Royal Globe Ins. Co. v. Whitaker,* 181 Cal.App.3d 532, 537, 226 Cal.Rptr. 435 (1986) ("[A]n intentional act is not an 'accident' within the plain meaning of the word.").

Upper Deck responds that a potential exists that any bodily injury to the underlying plaintiffs was caused by an accident. According to Upper Deck, customers, in an effort to obtain the valuable chase cards, became unexpectedly "hooked" on buying the decks. Plaintiff, Motion, 16–18; Reply, 3. Upper Deck contends it provided evidence to Federal of a possible addiction by its customers, which included the underlying plaintiffs' allegations of a "habit," the deposition testimony from plaintiffs regarding a "gambling process" and becoming "very distressed" and "frenzied" by their obsession with chase cards, and detailed scientific studies and other medical authority that discuss the relationship between chase cards and pathological gambling. Plaintiff, Motion, 5–10. Upper Deck continues to note that although it purposefully inserted the chase cards and intended the sale of its decks, it did not foresee the additional, unexpected, and independent happening of the underlying plaintiffs developing a "habit" which, in turn, may have led to their bodily injury. *Id.* at 16–18; Reply, 3. Based on this analysis, Upper Deck contends the injuries potentially suffered by the plaintiffs may have resulted from an "accident" and thus an "occurrence" within the meaning of Federal's policy.

### 3. Analysis

 The Court finds Upper Deck's arguments unpersuasive and rules that Federal has no duty to defend the Schwartz, Chaset, and Dumas lawsuits. Upper Deck, who has the burden to show the policy covers any legal action, has failed to provide facts that show a possibility that the underlying plaintiffs' injuries were caused by an occurrence (or accident).

### Not Unexpected

First, Upper Deck has failed to provide any evidence (i.e., declarations by Upper Deck management, deposition testimony, etc.) that if its customers became "hooked" on buying playing cards, that this was unforeseeable or unexpected.[3] Any argument to this effect would defy common sense; the whole point of marketing a business is to get customers "hooked" or in the "habit" of buying the seller's goods. This applies whether the company is selling hamburgers, ice cream, or trading cards. In fact, one of the pieces of evidence given to Federal when the insured tendered its defense specifically states how

---

**3.** Although Upper Deck says it provided evidence to Federal of "evidence of gambling addiction," it argues in its briefs that the unexpected consequence or happening was becoming "hooked" on buying trading cards, not becoming "addicted." Plaintiff, Motion, 16–18; Reply 3. Even if Upper Deck argued that the plaintiffs became "addicted" to gambling, rather than merely "hooked", the Court would still grant Federal's motion for summary judgment. Upper Deck has failed to provide one iota of evidence that its customers became "addicted."

sportcard manufacturers attempt to "hook" its customers:

> Sportcard manufacturers have devised marketing schemes which prey upon the public, and, more specifically, are directed at youngsters. Kids are "hooked" on chase cards, inserts, refractors and the like . . . .

Gregory Chapin, Decl. ¶ 17.

An insured cannot defeat an insurer's motion for summary judgment on its duty to defend by merely asserting, without any evidentiary support, that it did not expect the particular happening or consequence. The California Supreme Court, noting this potential problem, made this clear:

> [The insurer] raises the specter of intransigent insureds being empowered to block summary judgment, to which insurers are otherwise entitled, with mere assertions that coverage may exist. The prospect is apparent rather than real. This is because, as in summary judgment proceedings generally, an insured cannot manufacture a dispute on summary judgment . . . without some evidentiary support for its position.

Based on the evidence provided to the Court, no reasonable juror could conclude that Upper Deck has met its burden to show that it possibly did not expect or intend that its customers would become "hooked" or in the "habit" of buying its deck of cards.[4]

*Not a happening*

In the alternative, even if the insured were able to show a possibility that the underlying plaintiffs unexpectedly became hooked on buying playing cards, and this habit led to their injuries, this would still not constitute an accident as the term has been defined by the California courts.

The courts have made clear that an intentional act can constitute an accident only if this purposeful act is coupled with an independent, additional, and unforeseen *happening*. The insureds have not provided any evidence that the injury to the underlying plaintiffs was caused by an unforeseen and independent "happening."

Three cases, *Merced Mut. Ins. Co. v. Mendez*, 213 Cal.App.3d 41, 261 Cal.Rptr. 273 (1989), *Quan v. Truck Ins. Exch.*, 67 Cal.App.4th 583, 79 Cal.Rptr.2d 134 (1998), and *St. Paul Fire and Marine Ins. Co., v. Superior Court*, 161 Cal.App.3d 1199, 208 Cal.Rptr. 5 (1984), help delineate what constitutes an unforeseen happening. In *Merced* and *Quan*, the courts considered whether injuries to the underlying plaintiffs caused by forced sexual acts were caused by accidents and, thus, covered under the insureds' insurance policies. In both cases, although women accused the insured of forcing them to engage in oral copulation (*Mendez*) and sexual intercourse (*Quan*), the insureds argued that any possible injury to the underlying plaintiffs were caused by accidents because they believed the women had consented to the sexual acts. *Merced*, 213 Cal.App.3d at 50, 261 Cal.Rptr. 273; *Quan*, 67 Cal.App.4th at 600, 79 Cal.Rptr.2d 134.

Both courts, however, rejected the insureds' arguments and held that there was no possibility that an accident or an unexpected "happening" had caused the underlying plaintiffs' injuries. In *Merced*, 213 Cal.App.3d at 50, 261 Cal.Rptr. 273 (citations omitted), the court concluded:

> This sexual activity, which Ms. Peery alleges occurred against her will, forms the basis of her action against Mendez. All of the acts, the manner in which they

---

4. For this reason, even if the Court did apply the *Geddes* definition, that an accident is an unintentional and unexpected *consequence*, the Court should still grant the insurer's motion for summary judgment.

were done, and the objective accomplished occurred exactly as appellant intended. No additional, unexpected, independent, or unforeseen act occurred. 'Whatever the motivation,' because Mendez's conduct was 'calculated and deliberate', it was not an 'accident' and thus not an occurrence within the meaning of the policy provision. Because the conduct was not an occurrence, the insurer has no duty to defend an action arising out of this conduct.

In *Quan*, 67 Cal.App.4th at 600–601, 79 Cal.Rptr.2d 134, the court, similarly, held "the acts asserted to give rise to the underlying claimant's injuries were deliberate, regardless of whether any harm was intended or expected to come of them. No additional, unexpected, independent and unforeseen happening" produced the alleged injuries. *See also St. Paul Fire and Marine Ins. Co.*, 161 Cal.App.3d at 1202, 1203, 208 Cal.Rptr. 5 (holding that an insurer had no duty to defend the insured for damages caused by a termination of employment because firing an employee was not "an unintentional, unexpected, chance occurrence and, thus, there is no potential for liability").

These cases emphasize that an accident is not simply an "unexpected consequence," but rather an independent and unexpected happening. Although the courts have not clearly defined the term "happening," it is used in these cases to mean some sort of intervening event that breaks the normal and expected causal chain from intentional act to injury. In our case, forming a "habit" is not an unexpected *happening* or *act*, but, at best, an *unexpected reaction* to Upper Deck's in-

tentional act of inserting chase cards into its decks. The courts, however, in *Quan, Merced,* and *St. Paul*, rejected the argument that an unexpected reaction by the underlying plaintiffs to an intentional act constituted an accident. In this case, Upper Deck has not provided any evidence of a third-party action or intervening force; at best, all it has shown is that it did not expect how the underlying plaintiffs would react to the intentional act of selling chase cards. This is not enough to trigger the Federal's duty to defend. *See Dyer v. Northbrook Property & Casualty Ins. Co.*, 210 Cal.App.3d 1540, 1547, 259 Cal.Rptr. 298 (1989) ("Where the scope of basic coverage creates no potential liability under the policy, the courts may not use a strained construction to impose a liability upon an insurer that it has not assumed.")

Furthermore, even if an accident were defined simply as an unintended consequence (which it is not), the court in *Geddes*, 51 Cal.2d at 564, 334 P.2d 881, made clear that the accident had to be sudden. The court said, "it bears emphasis that we are concerned, not with a series of imperceptible events that finally culminated in a single tangible harm, but with series of specific events each of which manifested itself at an identifiable time and each of which caused identifiable harm at the time it occurred." *Id.* Upper Deck has failed to provide any evidence that the alleged accident in this case—becoming "hooked" on playing cards—was a sudden event rather than a "series of imperceptible events" which culminated in a single harm.[5]

The court grants Federal's summary judgment motion because Upper Deck has

---

**5.** Upper Deck also argues that the primary and umbrella policy insure it for "products-completed operations hazard," and therefore Federal has a duty to defend. Plaintiff, Reply, 3–4. This argument, however, fails. The Products–Completed Operations Hazard por-

tion of the policy relied on by Upper Deck is a definition that is used to *limit the scope of certain exclusions*, not a definition that independently grants coverage. *See* Federal, Ex. P000289.

failed to show any possibility of an accident or occurrence. Specifically, the insured has failed to show any potential (1) that any happening or consequence was unexpected and (2) that the underlying plaintiffs' injuries were caused by an independent happening that broke the normal causal chain between the intentional act and injury.

## B. Damages

Federal also argues that coverage does not exist because the underlying plaintiffs did not seek "damages," which the insurance policy covers. Because the Court has already ruled in favor of Federal, it declines to reach this issue.

## III. Conclusion

If the Court decides the insurer has a duty to defend in this case, it is hard to imagine a situation where the insurer's duty to defend would not be triggered. Although the duty to defend is extremely broad, it is not unlimited. As a matter of law, two reasons exist why Upper Deck has failed to show that any bodily injury was caused by an occurrence. First, the insured has failed to meet its burden of proof that it potentially did not expect that its customers would become "hooked" on buying decks of cards. Second, Upper Deck has not shown that any unexpected "happening" caused the injury. The Court grants Federal's motion for summary judgment and denies Upper Deck's summary judgment motion.

IT IS SO ORDERED.