The **UPPER DECK COMPANY, LLC,** a Delaware limited liability Company, Plaintiff–Appellant,

v.

**FEDERAL INSURANCE COMPANY,** an Indiana Corporation, Defendant Appellee.

No. 02–56081.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2003.

Filed Jan. 12, 2004.

Gary W. Osborne, Osborne & Nesbitt, San Diego, CA, for the plaintiff-appellant.

Peter Abrahams, Horvitz & Levy, Encino, CA, for the defendant-appellee.

Before BRIGHT,* O'SCANNLAIN, and McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge:

We consider here the scope of an insurer's duty to defend a lawsuit on the basis of an unpled theory of recovery and damages. This case arises out of a lawsuit brought against the Upper Deck Company ("Upper Deck") for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and various gambling laws for randomly inserting valuable cards into the packages of its entertainment and sports cards. Upper Deck tendered this litigation to Federal Insurance Company ("Federal") under insurance policies covering claims for bodily injury arising out of an accident. Federal rejected the tender on the grounds that there was no accident or occurrence as required under the policy.

Upper Deck then filed suit against Federal for breach of contract and declaratory relief. Upper Deck claimed that, although the lawsuit was styled as a RICO suit, it could have been construed or amended to assert damages for personal injury to children as a result of a gambling addiction. On cross motions for summary judgment, the district court denied Upper Deck's motion and granted Federal's motion. We affirm. Federal had no duty to defend under the policies because neither the complaint nor the extrinsic evidence available at the time of tender could be construed as giving rise to a claim to bodily injury.

## BACKGROUND

Upper Deck is a manufacturer of sports and entertainment trading cards, such as National Football League football cards and Princess Gwenevere and the Jewel Riders cards. Upper Deck sells packs of these cards, some of which contain randomly inserted "chase" cards. Chase cards are coveted and can have substantial value due to their limited production. The chance of finding a chase card in a pack is typically displayed on the package's wrapping and other advertising materials.

In July 1996, Upper Deck was named as a defendant in a class action lawsuit ("underlying lawsuit") claiming that the prac-

---

* The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

tice of inserting chase cards in packs of trading cards amounted to illegal gambling and violated RICO and California law.[1] Specifically, the underlying litigation alleged that the plaintiffs had "been injured in their business or property" as a direct and proximate result of Upper Deck's violations of 18 U.S.C. §§ 1962(b) and (d). The plaintiffs sought treble damages, attorney's fees, declaratory relief, injunctive relief, restitution, and disgorgement of Upper Deck's improper gains.

During the relevant times, Federal insured Upper Deck under successive primary and umbrella commercial general liability policies. The terms of each renewed primary policy were virtually identical and provided in part:

> We will pay the damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of:
>
> *bodily injury* or property damage *caused by an occurrence;* or personal injury or advertising injury to which this insurance applies.
>
> This insurance applies:
>
> 1. to bodily injury or property damage which occurs during the policy period; and
>
> 2. to personal injury or advertising injury only if caused by an offense committed during the policy period.
>
> We will defend any claim or suit against the insured seeking such damages. We will pay in addition to the applicable limit of insurance the defense expense.

(emphasis added). "Bodily injury" is defined as, "bodily injury, sickness or disease

sustained by a person, including death resulting from any of these at any time." The policy defines "occurrence" as, *"an accident,* including continuous repeated exposure to substantially the same general harmful conditions which results in bodily injury or property damage" (emphasis added). The umbrella policies are substantially similar to the primary policies except that "bodily injury" is more broadly defined as "injury to the body, sickness or disease, disability or shock, mental anguish or mental injury sustained by any person; including death from any of these at any time. . . ."

Upper Deck tendered the defense of the underlying lawsuit to Federal. In late 1996, Federal rejected the tender and denied its duty to defend Upper Deck, contending that there was "no coverage for the events and damages alleged." Two and a half years later, in May 1999, Upper Deck asked Federal to reconsider this decision. In support of its view that the policy covered the events and damages alleged in the underlying lawsuit, Upper Deck supplemented its request with extrinsic evidence.[2] One day later, Federal reiterated its denial.

As a consequence of the denials, Upper Deck filed a complaint against Federal for breach of contract of its duty to defend and for declaratory relief. The parties filed cross-motions for summary judgment. Along with its motion for summary judgment, Upper Deck submitted the same documents that it had enclosed in its May 1999 letter to Federal, as well as excerpts from depositions of three plaintiffs in the underlying litigation.

---

**1.** Between 1996 and 2000, Upper Deck was subsequently sued in two similar suits. Federal's failure to defend Upper Deck against the first action, known as the *Schwartz* litigation, is the only issue on appeal.

**2.** The extrinsic evidence included several articles, studies, and declarations regarding adolescent gambling problems and the connection to card collecting.

The district court concluded that, under applicable California law, Upper Deck had failed to establish that there was coverage under the policy, because the events involved were intentional, such that there was no "occurrence" or "accident" as required by the policy. Because the district court ruled in favor of Federal on the coverage question, it declined to reach the alternative issue of whether Federal breached its duty to defend.

## DISCUSSION

The district court focused on whether there was coverage under the policy. This question, in turn, leads to two lines of California cases, the *Hogan* and *Geddes* line of cases from the California Supreme Court, and the more recent *Quan* and *Merced* line of cases from the California Court of Appeal. *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal.3d 553, 91 Cal.Rptr. 153, 476 P.2d 825 (Cal.1970); *Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co.*, 51 Cal.2d 558, 334 P.2d 881 (Cal.1959); *Quan v. Truck Ins. Exch.*, 67 Cal.App.4th 583, 79 Cal.Rptr.2d 134 (Cal.Ct.App.1998); *Merced Mut. Ins. Co. v. Mendez*, 213 Cal. App.3d 41, 261 Cal.Rptr. 273 (Cal.Ct.App. 1989). The parties' views of the cases are polar opposites. The *Hogan* and *Geddes* line of cases suggests that an accident can be an unforeseen consequence of an intended act. *See Hogan*, 91 Cal.Rptr. 153, 476 P.2d at 827; *Geddes & Smith, Inc.*, 334 P.2d at 884. In contrast, the *Quan* and *Merced* line of cases suggests that the results of an intentional act cannot be considered an accident. *See Quan*, 79 Cal. Rptr.2d at 144; *Merced Mut. Ins. Co.*, 261 Cal.Rptr. at 279. Rather than dip a toe into this quagmire, we resolve the case on an alternate ground—the scope of Federal's duty to defend.

## I. SCOPE OF THE DUTY TO DEFEND

■■■ Under California law, "a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 17 Cal. Rptr.2d 210, 846 P.2d 792, 795 (1993). An insurance provider must "defend a suit which *potentially* seeks damages within the coverage of the policy." *Id.* at 795, 17 Cal.Rptr.2d 210 (internal quotation marks omitted) (italics in original). This rule leads to the conclusion that "the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Id.* at 795 (quoting *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 177, 178 (1966)). Consequently, the duty to defend may exist even though the complaint does not reflect a potential for liability if facts extrinsic to the underlying complaint generate the duty. *Id.*

■■■ Once it has been established that there is a duty to defend, "the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." *Id.* at 795–796. "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Id.* at 796.

## II. TIMING OF DETERMINATION OF DUTY TO DEFEND

■■■ The determination of potential coverage is made at the time the lawsuit is tendered to the insurance company. *Gunderson v. Fire Ins. Exch.*, 37 Cal.App.4th 1106, 44 Cal.Rptr.2d 272, 277 (Cal.Ct.App. 1995); *see also Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 24 Cal.

Rptr.2d 467, 861 P.2d 1153, 1157 (Cal.1993) ("[T]he existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit." (internal quotation marks omitted)). Once an insurer determines, on the basis of the complaint and the facts known to it at the time of tender, that there is no potential for coverage, the insurer does "not have a continuing duty to investigate or monitor the lawsuit to see if the third party later made some new claim, not found in the original lawsuit." *Gunderson*, 44 Cal. Rptr.2d at 279. If new extrinsic evidence raises a potential covered claim, the insured should submit a new tender of defense. In the absence of a new tender, the insurer is not charged with knowledge of new extrinsic facts; nor is it under an independent obligation to investigate the potential for coverage. *See id.*

Upper Deck tendered the underlying litigation to Federal for defense on two occasions. In August 1996, when Upper Deck first tendered the underlying litigation to Federal for defense, the only facts available to Federal were in the underlying complaint. In July 1999, Upper Deck again tendered the litigation for defense by requesting that Federal reconsider its denial. The only additional facts available at this time were the articles, studies, and declarations included with the letter. The record does not contain any further tenders of defense by Upper Deck to Federal.[3] The issue is whether the complaint, along with these additional materials, are enough to create a *potential* for coverage. See *id.* at 278.

## III. ANALYSIS OF POTENTIAL FOR COVERAGE

■ Upper Deck claims that Federal had a duty to defend it because the complaint, along with extrinsic evidence, supports a potential for damages covered under the policy. Upper Deck also claims that the underlying complaint could be amended to seek damages that were covered by the policy. "[T]he insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp.*, 24 Cal.Rptr.2d 467, 861 P.2d at 1160.

The insurance policy obligates Federal to defend Upper Deck against any claim for damages because of "bodily injury." "Bodily injury" includes "sickness or disease" and "disability or shock, mental anguish or mental injury." The complaint includes neither an explicit claim for bodily injury nor any claim for mental injuries associated with an addiction to trading cards. Rather, at every turn, the complaint stresses that the action is based on RICO and that the plaintiffs had "been injured in their business or property." Indeed, personal injuries are not even compensable under RICO. *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir.2001).

Nonetheless, even though there is no explicit claim for bodily injury, a potential for indemnity may also trigger Federal's duty to defend Upper Deck. In analyzing the potential for coverage, only lawsuits that involve the nature and kind of risk or injury covered by the insured's policy are considered. *See Vandenberg v. Superior*

---

3. Upper Deck claims that it sent Federal a letter in May 2000 that included notice of some deposition testimony. We cannot consider this letter, however, because it is not in the record.

*Court,* 21 Cal.4th 815, 88 Cal.Rptr.2d 366, 982 P.2d 229, 245 (Cal.1999) (holding that insurer was not allowed to deny coverage because complaint pled breach of contract rather than a tort action). Thus, the duty should be determined by the nature of the risk and the injury and not by an injured party's choice of remedy or the form of action sought. *Id.*

It is important to distinguish between claims that raise the possibility of coverage because they are brought under an uncovered theory, like a contract action rather than a tort action, and claims that do not raise the possibility of coverage because the claim alleges damages of a different nature and kind than those covered by the policy. Here we have the latter situation.

■ An insured has no reasonable expectation of coverage for a type of damage not alleged in the underlying complaint. *See e.g., Lassen Canyon Nursery v. Royal Ins. Co. of Am.,* 720 F.2d 1016, 1018 (9th Cir.1983) (policy covering claim for property damage did not cover claim for economic damages); *Hurley Constr. Co. v. State Farm Fire & Cas. Co.,* 10 Cal.App.4th 533, 12 Cal.Rptr.2d 629, 632 (Cal.Ct.App.1992) (insuring clause limited to third party claims for bodily injury and property damage did not cover claim for economic and punitive damages); *Giddings v. Indus. Indem. Co.,* 112 Cal.App.3d 213, 169 Cal. Rptr. 278, 281 (Cal.Ct.App.1980) (policy covering property damages did not cover claim for recovery for injuries to intangible economic interests).

These cases, which address the expectation of covered damages, are distinguishable from the cases cited by Upper Deck at oral argument, *Montrose Chemical Corporation* and *Horace Mann Insurance Company.* Both *Montrose* and *Horace Mann* rested on a determination of the theory of recovery, not the nature of the damages. *See Montrose Chem. Corp.,* 24

Cal.Rptr.2d 467, 861 P.2d at 1163–64; *Horace Mann Ins. Co.,* 17 Cal.Rptr.2d 210, 846 P.2d at 799–800.

Upper Deck argues that the underlying complaint *could* be construed to give rise to damages liability that would be covered under the policy. Citing several sections of the complaint, Upper Deck urges us to "connect the dots" to determine that there is a possibility of coverage. Specifically, Upper Deck points to paragraphs five and twenty-one of the underlying complaint. Paragraph five states: "Many of the persons who purchase Upper Deck's card packages in search of valuable chase cards are children and teenagers, who may spend up to several hundred dollars per month on the habit." Paragraph twenty-one states:

> There are questions of law and fact common to all members of the plaintiff class which predominate over any issues that may affect only individual members of the class. The common issues include: ... (d) whether Upper Deck's violations caused injury to the members of the plaintiff class; (e) what is the appropriate measure of damages....

In Upper Deck's view, these two statements, along with the extrinsic evidence, give rise to Upper Deck's potential liability for damages covered by the policies, because it should be inferred that some members of the plaintiff class could have been inflicted with a gambling addiction and therefore bodily injury.

■ We disagree. A thorough review of the underlying complaint and other extrinsic evidence available to Federal at the line of tender reveals no claim that could reasonably be construed as seeking recovery for bodily injury as defined in the policies. In sum, "[a]n insurer will not be compelled to defend its insured when the potential for liability is so tenuous and

farfetched." *Montrose Chem. Corp.*, 24 Cal.Rptr.2d 467, 861 P.2d at 1162(internal quotation marks and ellipsis omitted).

Paragraphs five and twenty-one of the underlying complaint do not allege sufficient facts to give rise to a claim for bodily injury. The dots simply do not connect. Paragraph five refers to children and teenagers spending money on the "habit" of purchasing these cards. Nothing in paragraph five would transform the passing reference to "habit" into a bodily injury or a disease. It is "tenuous and farfetched" to claim that the word "habit" in this context is being used in place of the word "addiction." Habits are not always injurious; nor do they connote addiction. Indeed, an insurer would need to be clairvoyant to read "addiction" into this underlying complaint. Under Upper Deck's theory, every children's fad could be considered a habit because of the time, energy, and money spent on the newest "in" toy whether it be trading cards, video games, or Beanie Babies. A passing reference to a passing fancy is hardly sufficient to sustain even a theoretical recovery under the "bodily injury or disease" clause.

Paragraph twenty-one encapsulates basic class action allegations. Upper Deck wants us to read this paragraph very broadly as a request for the court to determine any and all injuries possibly inflicted upon the underlying plaintiffs by Upper Deck and every possible damage. Similarly, at oral argument, Upper Deck asked us to remember that the underlying suit is a class action and that, even if the named plaintiffs did not suffer bodily injury, members of the class could have suffered bodily injury. This argument contradicts the complaint itself, which states in paragraph nineteen, "The claims of the named plaintiffs are typical of the claims of the other members of the plaintiff class, because all class members were similarly damaged as a result of Upper Deck's unlawful gambling."

The injuries alleged for the violation of gambling statutes are not for bodily injury, the type or nature of injuries covered by the insurance policy. Rather, the complaint alleges injury to the plaintiffs' business or property and seeks treble ·damages, attorney's fees, declaratory relief, injunctive relief, restitution, and disgorgement of Upper Deck's improper gains.

■ Recognizing the limitations of the complaint, Upper Deck shifts gears and argues that the complaint might be amended to give rise to a liability that would be covered under the policy. However, any such amendment must be supported by the facts already pled in the complaint. *Olympic Club v. Those Interested Underwriters at Lloyd's London*, 991 F.2d 497, 503 (9th Cir.1993) ("Only amendments that would include new *causes of action* clearly supported by the facts already pled in the complaint may support a finding of potential liability." (italics in original)); *Low v. Golden Eagle Ins. Co.*, 99 Cal.App.4th 109, 120 Cal.Rptr.2d 827, 831 (Cal.Ct.App.2002) (holding that there is no duty to defend a claim for uncovered economic losses even if it might later be amended to allege bodily injury); *Gunderson*, 44 Cal.Rptr.2d at 277 ("An insured may not trigger the duty to defend by speculating about ·extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date."); *Hurley Constr. Co.*, 12 Cal. Rptr.2d at 631 ("[T]he insured may not speculate about unpled third party claims to manufacture coverage.").

The plaintiffs in the underlying suit do not allege the type of damages covered by the policy. To support a finding of potential liability, the plaintiffs would need to allege *new facts* of bodily injury. Mere speculation that the plaintiffs could or will

allege such facts does not give rise to a duty to defend. The possibility of an amendment does not require the insurer to speculate about any conceivable claim that a plaintiff might bring against the insured or to spin out wild theories of recovery for every conceivable damage. Liability under the policies can only be characterized as speculative and hypothetical. The duty to defend, albeit a broad one, encompassing liability for damages *potentially* covered under the policies, does not stretch this far.

## CONCLUSION

We affirm the district court's denial of Upper Deck's motion for summary judgment and its grant of Federal's motion for summary judgment. Federal did not breach the insurance contract in rejecting the tender of defense and denying its duty to defend.

**AFFIRMED.**

BRIGHT, Circuit Judge, concurring specially:

I concur in the result but do so on the basis of the well-reasoned opinion of the district judge in this case. *Upper Deck Co. v. Federal Ins. Co.,* No. CIV. 01 CV1413–B, 298 F.Supp.2d 994, 2002 WL 32344339 (S.D.Cal. 2002).

In essence, the district judge determined that the insurer in this case was not obligated to defend the three separate lawsuits because Upper Deck, which has the burden to show the policy covers any legal action, has failed to provide facts that show a possibility that the underlying plaintiffs' injuries were caused by an occurrence (or accident). *Id.,* at 8, 298 F.Supp.2d at 998, 2002 WL 32344339.

The district court concluded that on the evidence provided to the court Upper Deck could not show that "it possibly did not expect or intend that its customers would become 'hooked' or in the 'habit' of buying its deck of cards." *Id.,* at 9, 298 F.Supp.2d at 1003, 2002 WL 32344339.

Based on the record and the reasoning of the district court, I agree that this case should be affirmed. I repeat the conclusion of the district court:

If the Court decides the insurer has a duty to defend in this case, it is hard to imagine a situation where the insurer's duty to defend would not be triggered. Although the duty to defend is extremely broad, it is not unlimited. As a matter of law, two reasons exist why Upper Deck has failed to show that any bodily injury was caused by an occurrence. First, the insured has failed to meet its burden of proof that it potentially did not expect that its customers would become "hooked" on buying decks of cards. Second, Upper Deck has not shown that any unexpected "happening" caused the injury.

*Id.,* at 12, 298 F.Supp.2d at 1003, 2002 WL 32344339. The district court properly ruled that no duty to defend existed because of the absence of an occurrence or accident rather than on the grounds asserted for affirmance by the majority.