**ARROWOOD INDEMNITY CO.**

v.

**INS. CO. PENN.**

Case No. 2:12–CV–04947 SVW–AJWx

United States District Court,
C.D. California.

Signed December 18, 2012

**1142**

Linda Bondi Morrison, Ryan B. Luther, Tressler LLP, Irvine, CA, for Arrowood Indemnity Co.

Anne M. Master, Herold and Sager, Encinitas, CA, for Ins. Co. Penn.

Proceedings: IN CHAMBERS ORDER re: Defendants' Motion to Dismiss [18]

STEPHEN V. WILSON, District Judge

## I. INTRODUCTION

On June 6, 2012, Plaintiff Arrowood Indemnity Company ("Plaintiff") filed this action against Defendant Insurance Company of Pennsylvania ("Defendant"), seeking a declaration that Defendant has a duty to defend the parties' common insured, the City of Santa Clarita ("City"). (Dkt.1). On August 30, 2012, the Court granted Defendant's Motion to Dismiss with leave to amend, holding that Plaintiff had failed to allege that the City exhausted the retained limits as set forth in its policies with Defendant. (Dkt.16). On September 5, 2012, Plaintiff filed its First Amended Complaint ("FAC"), alleging exhaustion of the retained limits, as well as

its original causes of action for declaratory relief and equitable contribution. (Dkt.17).

On September 20, 2012, Defendant filed the instant Motion to Dismiss. (Dkt.18). Defendant argues that it does not have a duty to defend because certain exclusions under its insurance policies foreclose the possibility of coverage for the City. For the reasons set forth below, Defendant's Motion to Dismiss is DENIED.

## II. FACTUAL ALLEGATIONS

### A. Defendant's Insurance Policies

Defendant is an excess insurance provider for the City. Defendant issued three special excess liability policies to the City: (1) Policy No. 4204–4265 for the period of March 1, 2003 to March 1, 2004 (FAC, Ex. A); (2) Policy No. 4204–1295 for the period of March 1, 2004 to March 1, 2005 (FAC, Ex. B); and (3) Policy No. 4205–2156 for the period of March 1, 2005 to March 1, 2006 (FAC, Ex. C) (collectively, "Policies"). (FAC ¶ 6). Each policy provides excess coverage either (1) for an "occurrence" under the "Bodily Injury and Property Damage Liability" coverage or (2) for a "wrongful act" under the "Errors and Omissions Liability" coverage. (FAC ¶ 7). The Policies obligate Defendant to defend the City when the applicable retained limit has been "exhausted by payment to a third party of judgments, settlements or defense costs." (FAC ¶ 8).

### B. Underlying Consolidated Actions

Plaintiff seeks contribution on the ground that Defendant has a duty to defend the City in three consolidated lawsuits brought by residents of the City: (1) *Kim v. City of Santa Clarita*, No. BC407614 (Def. Request for Judicial Notice ("RJN"), Ex. 1); (2) *Canyon Gate Maint. Assoc. v. City of Santa Clarita*, No. BC415663 (RJN, Ex. 2); and (3) *Warrick v. City of Santa Clarita*, No. PC046442

(RJN, Ex. 3).[1] The complaints in these actions raise materially similar allegations, as follows.

On or about November 28, 2000, the City approved the proposed development of Canyon Gate, a project consisting of 150 detached single-family homes. (RJN, Ex. 1, ¶ 10).[2] The City conditioned its approval on the construction of Golden Valley Road between Sierra Highway in the west and Green Mountain Drive in the east. The City contracted with a group of developers—Zephyr, Draper, and D.R. Horton (collectively, "Developers")—to build the road and develop the tract. (Id. ¶¶ 12–15).

According to the residents, the Developers "cut corners in the geotechnical engineering, design, grading, and excavation for these tracts, in an effort to minimize the estimated cost ..., and to maximize their profits." (Id. ¶ 21). Specifically, in 1999, Zephyr was advised by its geotechnical consultant that a large landslide complex, consisting of several shallow and deep-seated landslides, lay beneath the tract. The consultant recommended Zephyr, inter alia, to install "drilled shear pins" to stabilize the complex. (Id. ¶ 23). Instead of heeding this warning, Zephyr hired a new consultant that recommended eliminating the "drilled shear pins" and changing the design of the shear keys (the "Modified Plan"). (Id. ¶ 25).

In March 2002, the City's independent geotechnical consultant reviewed the Modified Plan and recommended its denial, citing safety concerns with the revised shear key design. (Id. ¶ 36). However, not only did the Developers continue their construction, but the City soon replaced its

consultant in February 2003. (Id. ¶ 44). The residents allege that the City fired its original consultant "due to political pressure by the Mayor and City Council to complete the extension of Golden Valley Road." (Id. ¶ 45). In sum, the residents allege that the City ignored the warnings of its original consultant and instead permitted the Developers to execute the Modified Plan despite its known risks. (Id. ¶ 48).

As these events were unfolding, and as early as March 2002, "multiple backcut failures, earth movement, and fissures and cracks in the ground surface occurred during the implementation of the unapproved design change for the shear keys by" the Developers. (Id. ¶ 38). In January 2003, the City began receiving claims from homeowners whose properties were situated above the landslides in the Canyon Gate project. (Id. ¶ 49). The residents further allege that despite the City and the Developers' knowledge of these geological dangers, the Developers began selling homes in Canyon Gate to new homeowners in late 2004. (Id. ¶ 53).

Based on the foregoing allegations, the residents have brought four causes of action against the City: (1) inverse condemnation; (2) dangerous condition of public property; (3) private nuisance; and (4) governmental negligence. The gist of each claim is that the City's approval of and participation in the faulty Modified Plan resulted in damage to the residents. Particularly relevant to the instant coverage dispute is the nature of the claimed damages against the City:

---

1. Federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir.2011) (internal quotation marks omitted)

2. Citations are to the operative complaint in the *Kim* action. Unless otherwise noted, the allegations in the other two actions are identical, though the paragraphs may be numbered differently.

- **Inverse Condemnation:** "Plaintiffs have sustained damage to their properties caused by the failure to stabilize the Friendly Valley Landslide Complex beneath Tract Nos. 48892 and 48892–01 as a result of the improper design and grading for these tracts as approved by the City." *(Id.* ¶ 76).
- **Dangerous Condition of Public Property:** "[T]he aforementioned dangerous condition existing on Tract Nos. 48892 & 48892–01 created a substantial risk of physical damage to the land, improvements and structures located on the Plaintiffs' properties," as well as "damages as more specifically alleged herein." *(Id.* ¶¶ 83–84).
- **Private Nuisance:** The "geologic hazards" resulting from the City's acts and omissions have (1) "substantially interfered with the Plaintiffs' use and enjoyment of their land;" (2) "their property has sustained permanent physical injury;" (3) the residents "have incurred physical damage to the land, improvements and structures located on their residential real property and/or a diminution in value of their residential real properties;" and (4) "Plaintiffs have suffered annoyance, discomfort and inconvenience." *(Id.* ¶¶ 87–90).[3]
- **Governmental Negligence:** "As a direct, foreseeable and proximate result of said acts and omissions, Plaintiffs have incurred damages as more specifically alleged herein." *(Id.* ¶ 98).

### C. Tender and Thereafter

On January 22, 2010, the City tendered its defense to Defendant. (FAC ¶ 15). On May 17, 2012, Defendant issued a letter denying its obligation to defend the City. (FAC ¶ 25). Thus, Plaintiff filed its original complaint on June 6, 2012, seeking equitable contribution and a declaratory judgment that Defendant owes a duty to defend the City. (Dkt.1). However, the Court granted Defendant's Motion to Dismiss on the ground that the pleadings failed to allege that the City had exhausted its retained limits on one or more of its Policies with Defendant. (Dkt.16). The Court's ruling did not reach whether the City's coverage was subject to any policy exclusions.

On September 4, 2012, Plaintiff filed its First Amended Complaint alleging the same claims, but supplementing the pleadings with respect to the retained limits. The FAC now alleges that the City has exhausted the retained limit as stated in one or more of the Policies, and that the City has notified Defendant of this fact. (FAC ¶¶ 17–23). Defendant does not dispute this, but filed a Motion to Dismiss on the ground that it has no duty to defend the City in the Underlying Actions. (Dkt.17).

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A

---

**3.** The fourth type of damage is not alleged in the underlying complaint brought by the Canyon Gate Maintenance Association, since its claims relate to common areas. (RJN, Ex. 2 ¶¶ 92–93).

complaint that offers mere "labels and conclusions"· or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). "Allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion." *Odom v. Microsoft Corp,* 486 F.3d 541, 545 (9th Cir.2007).

## III. DISCUSSION

### A. General Principles

California law governs this diversity case. As the Ninth Circuit has explained:

> Under California law, a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. An insurance provider must defend a suit which *potentially* seeks damages within the coverage of the policy. This rule leads to the conclusion that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. Consequently, the duty to defend may exist even though the complaint does not reflect a potential for liability if facts extrinsic to the underlying complaint generate the duty.

*The Upper Deck Co., LLC v. Fed. Ins. Co.,* 358 F.3d 608, 612 (9th Cir.2004) (internal citations and quotation marks omitted) (emphasis in original). *See also Reese Travelers Ins. Co.,* 129 F.3d 1056, 1060 (9th Cir.1997) ("[W]hen a suit against an insured alleges a claim that 'potentially' or even 'possibly' could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate by reference to 'undisputed facts' that the claim cannot be covered." (internal quotation marks omitted)).

Conversely, " '[t]his obligation can be excused only when the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.' " *Id.* (*quoting Lebas Fashion Imports v. ITT Hartford,* 50 Cal.App.4th 548, 59 Cal.Rptr.2d 36, 40 (Ct.App.1996)). In other words, "[w]here the policy provides no potential for coverage, the insurer is under no duty to defend in the underlying action." *Id.* (citing *Waller v. Truck Ins. Exch.,* 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619, 627 (1995)). "An insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds." *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.,* 100 Cal.App.4th 1017, 123 Cal.Rptr.2d 256, 272 (Ct.App.2002). "To determine whether the insurer owes a duty to defend, the court must compare the allegations of the underlying complaint with the terms of the policy." *Reese,* 129 F.3d at 1060 (*citing Montrose Chem. Corp. v. Super. Ct.,* 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 861 P.2d 1153, 1157 (1993) (en banc)). "Any doubt as to whether there is a duty to defend must be resolved in favor of the insured." *Id.* (*citing Montrose,* 24 Cal.Rptr.2d 467, 861 P.2d at 1160)). Thus, to prevail on its Motion to Dismiss, Defendant must demonstrate that the FAC fails to plausibly allege a potential for coverage.

### B. Exclusions Do Not Foreclose Possibility of Coverage

Defendant does not contend that the allegations of the Underlying Actions fail to trigger coverage under the Policies. Indeed, the parties agree that all the underlying claims against the City allege wrongful acts that trigger coverage under the "Errors and Omissions Liability" provision of the Policies. (*See* Pl. Opp. at 13); (Def. Mot. at 10). Rather, Defendant·argues that coverage is foreclosed by two exclusions in the Policies: (1) the land subsidence exclusion; and (2) the wrongful acts exclusion.

First, the "Land Subsidence Exclusion" states that "[Defendant] will not defend or

pay under this Policy for claims or suits against [the City]: ... [f]or any **property damage** arising out of **land subsidence** for any reason whatsoever." (FAC, Ex. 1 § V.X).[4] "Property damage" is defined by the Policies as "[p]hysical injury to or destruction of tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured or destroyed." (*Id.* § II.AA). "Land subsidence" means "the movement of land or earth, including, but not limited to, sinking or settling of land, earth movement, earth expansion and/or contraction, landslide, slipping, falling away, caving in, eroding, earth sinking, and earth rising or shifting or tilting." (*Id.* § II.P).

Second, the "Wrongful Acts Exclusion" states that "[Defendant] will not defend or pay under this Policy for claims or suits against [the City]: ... [f]or **bodily injury** or **property damage**, arising out of a **wrongful act** ... whether causing or contributing to such **bodily injury** or **property damage**." (*Id.* § V.A). "Wrongful act" is defined in the Policies as "[a]ny actual or alleged error or misstatement, omission, negligent act, or breach of duty including misfeasance, and nonfeasance by **you**," including, in pertinent part, "[a]ny negligence ministerial act." (*Id.* § II.MM). Meanwhile, "bodily injury" is defined as "bodily harm, sickness, disability or disease," as well as "mental injury, mental anguish, humiliation, shock or death *if* resulting directly from **bodily injury**, sickness, disability or disease." (*Id.* § II.C).

As stated above, the parties do not dispute that all the underlying claims against the City are based on the City's allegedly wrongful acts. Therefore, the Land Subsidence Exclusion is superfluous because

any liability for property damage would also be excluded by the Wrongful Acts Exclusion. Accordingly, the question is to what extent the Wrongful Acts Exclusion precludes coverage for the damage claims against the City.

Here, Plaintiff does not dispute that to the extent the underlying claims subject the City to liability for physical property damage and bodily injury, coverage is excluded by the Wrongful Acts Exclusion. (*See* Pl. Opp. at 15–16 ("Rather, [Defendant] can only establish that the Wrongful Acts Exclusion applies to eliminate a defense obligation *if* it can conclusively establish that the Plaintiffs cannot recover damages for anything *other than* 'property damage' or 'bodily injury' as those terms are defined in the [ ] Policies.") (emphasis added)).

Instead, Plaintiff argues that the Wrongful Acts Exclusion does not apply to the underlying claims for private nuisance insofar as they seek damages for "diminution in value of [the] residential real properties." (RJN, Ex. 1 ¶¶ 87–90). Plaintiff contends that because diminution in value does not constitute "property damage" as defined in the Policies, it does not fall within the ambit of the Wrongful Acts Exclusion.

Plaintiff is correct that diminution in value does not necessarily constitute "property damage" as defined in the Policies. In *New Hampshire Ins. Co. v. Vieira*, 930 F.2d 696 (9th Cir.1991), the Ninth Circuit addressed whether the diminution in value of housing resulting from the defective installation of drywall constituted "property damage" within the meaning of the parties' insurance policy. The policy in *Vieira*, much like those at issue here, defined "property damage" as "(1)

---

4. Citations are to the 2003–2004 Policy. Unless otherwise noted, the provisions in the

other two Policies are identical.

physical injury to or destruction of tangible property ..., including the loss of use thereof ..., or (2) loss of use of tangible property, which has not been physically injured or destroyed." *Id.* at 697–98. The court found it significant that this definition of property damage was narrower in scope compared to earlier policies in that the new definition requires that "physical or tangible property be affected." *Id.* at 698. The court therefore concluded that under California law, "diminution in value to the housing projects does not constitute property damage as defined by the policy" because it is not "physical damage" to "tangible property." *Id.* at 700–01.

This conclusion comports with a common-sense reading of the Policies. To reiterate, "property damage" is defined by the Policies as "[p]hysical injury to or destruction of tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured or destroyed." (*Id.* § II.AA). While "loss of use" might be similar to diminution in value, it is not the only form of diminution in value. Specifically, it is not difficult to infer that the land subsidence allegedly caused by the City's misfeasance could have reduced the market value of the properties on the affected tract. Thus, even a Canyon Gate home that had not yet sustained physical injury, or resulting loss of use, could have lost value solely on the basis of the known geological risks attendant to the property. Such diminution in value, therefore, is a harm that is distinct from physical damage to, or loss of use of the property.

Defendant argues that diminution in value cannot be distinct from "property damage" because it is nothing more than a measure of "property damage." In partic-

ular, Defendant relies on *Pruyn v. Agricultural Ins. Co.*, 36 Cal.App.4th 500, 42 Cal.Rptr.2d 295, 300 n. 6 (Ct.App.1995), for the statement that "[i]n the liability policy context, diminution in market value is accepted as a proper method of measurement of any property damages which may have been sustained." This comment does not alter the Court's conclusion, for several reasons. First, the question of whether diminution in value constitutes property damage was not the issue before the court in *Pruyn*, so the statement is pure dicta. Further, *Pruyn* is unhelpful because it never stated the policy's definition of "property damage." Thus, the court had no occasion to decide whether diminution in value was synonymous with "property damage" as defined in the policy in that case. *Pruyn*, 42 Cal.Rptr.2d at 300. Second, the cases relied on in *Pruyn* both involved insurance policies that defined "property damage" as injury or damage to property, without cabining the term to *physical* damage. *See Geddes & Smith, Inc. v. St. Paul–Mercury Indemnity Co.*, 51 Cal.2d 558, 334 P.2d 881, 883 (1959); *Eichler Homes Inc. v. Underwriters at Lloyd's, London*, 238 Cal.App.2d 532, 47 Cal.Rptr. 843, 844–45 (Ct.App. 1966). *Geddes* and *Eichler* are therefore distinguishable because they only suggest that diminution in value may be a proxy for property damage in general. However, none of the aforementioned cases stand for the proposition that diminution in value is solely a measure of "property damage" understood as *physical* damage.

In sum, the Court concludes that diminution in value of the residents' homes is a type of damage that does not necessarily fall within any exclusion set forth in the Policies.[5] Given that the Canyon Gate res-

---

5. The Court is skeptical of Plaintiff's suggestion that diminution in value *resulting from* loss of use and enjoyment is distinguishable from "property damage" as defined in the

Policies. The Policies define "property damage" to include "loss of use" of tangible property, whether or not the property is physically

idents seek damages for diminution in value of their homes, this claim for relief could subject the City to damages covered under its Policies. While it is possible that the residents ultimately will not prevail, Defendant has not shown that the residents cannot possibly succeed.

## IV. CONCLUSION

For the reasons set forth in the Order, Defendant's Motion to Dismiss is DENIED.

injured or destroyed. (RJN, Ex. 1 § II.AA). Thus, to the extent the diminution in value is merely reflective of loss of use, it arguably could fall within the Wrongful Acts Exclusion for property damage. However, as the Court explains above, not all forms of diminution in value constitute "property damage" within the meaning of the Policies. Thus, there remains a possibility that the City will become liable for covered damages.